208 N.J. Super. 548 (1986)
506 A.2d 755
RADIOLOGICAL SOCIETY OF NEW JERSEY, APPELLANT,
v.
NEW JERSEY STATE DEPARTMENT OF HEALTH, HOSPITAL RATE SETTING COMMISSION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1986.
Decided March 10, 1986.
*550 Before Judges FRITZ, GAYNOR and BAIME.
Joseph M. Gorrell argued the cause for appellant (Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, attorneys; Barry H. Ostrowsky, of counsel; Joseph M. Gorrell, on the brief).
Charlotte Kitler, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Charlotte Kitler, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
*551 This is an appeal from a determination of the Hospital Rate Setting Commission (Commission) requiring that providers obtain a certificate of need as a prerequisite to reimbursement for CT scanning and MRI services[1] furnished to hospital inpatients. The Commission's decision was rendered in the form of a Department of Health (Department) policy statement which was adopted following a series of hearings at which selected members of the industry and the Public Advocate were invited to attend and provide comments. Appellant, the Radiological Society of New Jersey, contends that the Commission's decision encompassed de facto rule-making in violation of the requirements of the Administrative Procedure Act (N.J.S.A. 52:14B-1 et seq.). It is also argued that the policy enunciated by the Commission constitutes an unlawful intrusion into the private practice of medicine and, thus, contravenes the provisions of the Health Care Facilities Planning Act (N.J.S.A. 26:2H-1 et seq.). We disagree and affirm.
A description of the applicable statutes and regulations is necessary for a full understanding of the issues presented. Both the Department of Health and the Commission operate under the aegis of the Health Care Facilities Planning Act. That statutory scheme was enacted in 1971 in order to "promote the financial solvency of hospitals and similar health care facilities" and contain the spiraling cost of inpatient and outpatient medical care. N.J.S.A. 26:2H-1. As a means of implementing that articulated public policy, the Department was charged with the responsibility of certifying institutional "schedules of rates, payments, reimbursement, grants and other charges for health care services" in New Jersey. N.J.S.A. 26:2H-5b(2). The Commission was established under the auspices of the Department to "approve or adjust the preliminary *552 cost base, and ... approve an appropriate schedule of rates for all hospitals...." N.J.S.A. 26:2H-4.1b.
Although the Commission lacks rule-making authority, it is authorized by statute to "consider adjustments to the certified revenue bases and schedule of rates" of health care facilities and to conduct "public hearings in order to obtain the evidence required to support its conclusions and determinations." N.J.S.A. 26:2H-18.1c. The review proceedings authorized by the Act are "designed in large measure to elicit quasi-legislative determinations analogous to prospective rate-making generally characteristic of regulated industries." In re 1976 Hosp. Reimbursement Kessler Mem. Hosp., 78 N.J. 564, 576-577 (1979) (Handler, J., concurring). The program is also intended to insure that health care resources are effectively utilized. The rate review program attempts to achieve this goal through the process of "manipulating and influencing the incentives in the third-party reimbursement mechanism so that health care providers are rewarded for cost-efficient and penalized for cost-extravagant behavior." Id. at 583.
Another significant cost containment component of the Act is the certificate of need program. N.J.S.A. 26:2H-7 to 11. This program requires providers to demonstrate that any proposed creation or expansion of services is necessary, economical and will contribute to the orderly development of adequate health care facilities. N.J.S.A. 26:2H-8. A critical aspect of the program is N.J.S.A. 26:2H-7 which provides that:
No health care facility shall be constructed or expanded, and no new health care services shall be instituted after the effective date of this act except upon application for and receipt of a certificate of need as provided by this act. No agency of the State or of any county or municipal government shall approve any grant of funds for, or issue any license to, a health care facility which is constructed or expanded, or which institutes a new health care service, in violation of the provisions of this act.
This provision is designed to assure cost-efficiency as much as quality. Stated another way, the paramount objective of the Act is to "promote only those `highest quality' health care services that are justifiable in a cost-benefit sense," In re 1976 *553 Hosp. Reimbursement Kessler Mem. Hosp., supra, 78 N.J. at 583, and N.J.S.A. 26:2H-7 accomplishes this goal by placing a direct check on proposed expansion programs.
The certificate of need program established by the Act interfaces with federal statutes and regulations. Specifically, the National Health Planning and Resources Development Act of 1974 imposes the requirement that, as a condition of federal funding, states administer a certificate of need program consistent with standards promulgated by the Secretary of the United States Department of Health and Human Services. 42 U.S.C. § 300m-2(a)(4)(B). See also S.Rep.No., 96-96, 96th Cong., 1st Sess. 5, reprinted in 1979 U.S.Code Cong. & Ad. News 1306 at 1310. In 1979, the federal statute was amended to require that "any person [who] enters into a contractual arrangement to acquire major medical equipment" costing in excess of $150,000 must notify the state agency of his "intent to acquire such equipment and of the use that will be made of the equipment."[2] 42 U.S.C. § 300m-6(e)(2)-(3). The amendatory legislation also provides that "a certificate of need shall not be required for the acquisition of major medical equipment which will not be owned by or located in a health care facility unless ... the [s]tate [a]gency finds ... that the equipment will be used to provide services for inpatients of a hospital." 42 U.S.C. § 300m-6(e)(1)(A) (emphasis added). These amendments were intended "to broaden [s]tate certificate of need requirements to include expensive equipment regardless of location if [such] equipment [is to] be used to provide services on a regular basis to inpatients of hospitals." S.Rep.No. 96-96, supra, 1979 U.S.Code Cong. & Ad. News at 1378. This purpose was made manifest by the Senate report accompanying the amendments which contains the following comment:
The conferees note that in order for a certificate of need program to be acceptable ... it must provide for the review and approval of the acquisition of *554 major medical equipment that will be used to provide services to patients who are inpatients of a hospital at the time the service was provided.... The conferees want to make clear that this provision is a minimum requirement of an acceptable certificate of need program.... [Id. at 1450].
In an effort to comply with this minimum federal requirement, the New Jersey Department of Health revised its regulations for the certificate of need program on August 6, 1981.[3]See Forward to N.J.A.C. 8:33-1. The Department adopted N.J.A.C. 8:33-1.5(d)(3) which comports with the federal statutes by stating that:
Acquisition of major movable equipment not owned by or located in a hospital requires a Certificate of Need if the acquisition is made by or on behalf of a central services facility or will result in the creation of a central services facility and the equipment will be used to provide services to inpatients of one or more hospitals and the acquisition results in a capital expenditure greater than $150,000 per unit. Such applicants must submit a Letter of Intent to the department and the applicable health system agency(ies) not less than 30 days before the initial submission of the application. [Emphasis added.]
Although this regulation was in place as of 1981, neither the Department nor the Commission sought to apply it to private physicians furnishing CT scanning and MRI services to hospital inpatients until much later. The chronology of events is inextricably interwoven with changes in federal statutes and regulations. As noted previously, the Health Care Facilities Planning Act states that "health care services provided by a hospital shall be at reasonable rates...." N.J.S.A. 26:2H-18b. Pursuant to its hospital rate-setting responsibilities, the Department sought and secured participation in the federal Medicare program. See 42 U.S.C. § 1395b-1. The New Jersey Medicare waiver permitting this State to participate in the federal program was due to expire on December 31, 1983. On December 21, 1983, the United States Department of Health and Human Services approved a temporary extension of New Jersey's Medicare waiver. The extension was conditioned, however, upon *555 several modifications of the State's billing system. One condition directed the Department to revise its statewide billing policy and "rebundle" certain services.[4] This requirement, mandated by 42 U.S.C. § 1395y(a)(14), applies to all hospitals receiving reimbursement from Medicare. That section commands that all items and non-physician services furnished to hospital inpatients be billed through the hospital. Ibid. See also 48 Fed.Reg. 39792-39793 (September 1, 1983).
In order to achieve timely compliance with the conditions of the Medicare waiver, the State adopted its "rebundling" regulation, N.J.A.C. 8:31B-4.32(c), as an emergency measure on January 17, 1984. That regulation provides:
All non-physician services and supplies provided to hospital inpatients, whether provided directly by the hospital or by a vendor, will be considered services and costs related to patient care, and are, therefore, financial elements. [N.J.A.C. 8:31B-4.32(c); 16 N.J.R. 252 (February 6, 1984)].
During the hearings relating to this regulation, the Public Advocate strongly urged the adoption of language designed to prohibit reimbursement for inpatient services furnished by those failing to obtain a certificate of need. See 42 C.F.R. 124, 404(a)(4). In response to these comments, the Department promulgated N.J.A.C. 8:31B-4.32(d) which states that:
All costs of services and supplies purchased from a vendor shall be subject to review for reasonableness by the Department of Health and must be approved by the Hospital Rate Setting Commission. The Commission shall have the right to disapprove reimbursement for services purchased from vendors that are in violation of State or Federal certificate of need regulations. [N.J.A.C. 8:31B-4.32(d); 16 N.J.R. 893-894 (April 16, 1984)].
These regulations effected radical changes in institutional billing policy and ultimately led to the present dispute. Prior to adoption of these measures, certain services and supplies, including radiology services, were billed by vendors directly to the patient or third party payor. The regulations require that such services be "rebundled" and billed through the hospital *556 subject to the Commission's review of the costs charged. Most pertinent to the present appeal is the obligation of the Commission to "disapprove reimbursement for services purchased from vendors that are in violation of State or Federal certificate of need regulations." N.J.A.C. 8:31B-4.32(d).
Following adoption of these regulations, the Department commenced its implementation program by incorporating the cost of items and services supplied by vendors into the schedule of rates for hospitals for the 1984 rate year. During this process, questions arose concerning the applicability of N.J.A.C. 8:33-1.5(d)(3) which, as we have mentioned, requires that vendors obtain a certificate of need prior to the acquisition of major movable medical equipment which will be used to provide inpatient services. Members of the Department prepared a policy paper dealing with this subject and circulated it to interested parties on July 12, 1984. The paper was then revised and recirculated on November 29, 1984.
Pursuant to N.J.S.A. 26:2H-18.1c, the Commission conducted protracted hearings concerning the question. Departmental staff and members of the public submitted written comments and made oral presentations. Finally, the policy paper was adopted on February 20, 1985. The policy statement requires providers of CT scanner and MRI services to obtain a certificate of need as a prerequisite for reimbursement if they supply such services to hospital inpatients on a regular basis. According to a proviso supplied by the Commission, a provider already furnishing CT scanning services to inpatients is to continue to recover reimbursement upon the condition that he file a letter of intent to submit an application for a certificate of need on or before March 15, 1985. This grace period was designed to enable providers to comply with the requirements of N.J.A.C. 8:33-1.5(d)(3).
No similar grace period was accorded to providers of MRI services. This device produces pictures based on responses of atomic nuclei in a magnetic field. N.J.A.C. 8:33J1.1. It has *557 only recently received marketing clearance as a new technological instrument by the Food and Drug Administration and its utility remains unproven in terms of medical diagnostic benefit. Because of its novelty and expense, regulations were passed in May 1984 permitting the institutional initiation of a limited number of MRIs as demonstration projects. N.J.A.C. 8:33J. Since MRIs constituted wholly new technological services for which no certificate of need had yet been granted, the Commission determined that the circumstances did not call for any grace period. Thus, the policy statement provides that reimbursement will not be allowed for any MRI services to inpatients unless the provider, whether a hospital or outside vendor, has obtained a certificate of need.
This appeal followed the Commission's unanimous adoption of the policy statement.

I
We first address appellant's argument that the Commission's policy statement was tantamount to an agency rule and was adopted in violation of the notice and publication requirements of the Administrative Procedure Act. N.J.S.A. 52:14B-1 et seq. The Commission concedes that it failed to comply with the Act. It contends, however, that such compliance was unnecessary because the policy statement was merely a reflection of pre-existing legal requirements and was designed to provide clear warning regarding its enforcement policy. The critical question, therefore, is whether the Commission's statement constitutes a de facto agency rule. We hold that it does not.
Resolution of the question involves a consideration of the nature of a "rule" as it affects administrative agency policy-making and regulation. N.J.S.A. 52:14B-2(e) defines an administrative agency rule in the following terms:
"Administrative rule" or "rule," when not otherwise modified, means each agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice *558 requirements of any agency. The term includes the amendment or repeal of any rule, but does not include: (1) statements concerning the internal management or discipline of any agency; (2) intraagency and interagency statements; and (3) agency decisions and findings in contested cases.
With whatever disarming ease this definition can be articulated, its application is not without difficulties.
The subject was exhaustively explored by our Supreme Court in Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313 (1984). There the Court observed that the question had spawned much litigation. Id. at 328-331. See, e.g., Crema v. New Jersey Dept. of Environmental Protection, 94 N.J. 286 (1983); Texter v. Human Services Dept., 88 N.J. 376 (1982); Bally Mfg. Corp. v. New Jersey Casino Control Comm'n, 85 N.J. 325 (1981); Boller Beverages, Inc. v. Davis, 38 N.J. 138 (1962). Synthesizing the existing authority, the Court stated that an administrative determination should be considered an agency rule in many or most of the following circumstances:
(1) [it] is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) [it] is intended to be applied generally and uniformly to all similarly situated persons; (3) [it] is designed to operate only in future cases, that is, prospectively; (4) [it] prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) [it] reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear past agency position on the identical subject matter; and (6) [it] reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. [Metromedia, Inc. v. Director, Div. of Taxation, supra, 97 N.J. at 331-332.]
It is obvious from our recitation of these factors that the Commission's policy statement has some of the characteristics of an agency rule. Nevertheless, we do not read our Supreme Court's opinion in Metromedia as requiring a quantitative rather than qualitative analysis of the factors listed. In any event, we cannot fairly say that "all or most of the relevant features of administrative rules are present [in this case] and preponderate in favor of the rule-making process." Id. at 331. This is not a case where the Commission's action "had the *559 effect of amending a regulation which ... [was] previously promulgated." Shapiro v. Albanese, 194 N.J. Super. 418, 429 (App.Div. 1984), or represented "a marked departure from a longstanding policy or practice...." Humane Society of the U.S. v. Guido, 173 N.J. Super. 223, 233 (App.Div. 1980).
In our view, the policy statement was simply a re-affirmation of the certificate of need requirements already enunciated in existing regulations, N.J.A.C. 8:33-1.5(d)(3), and an announcement giving notice and fair warning that the Commission intended to fully enforce the law. Although the directive is for the most part to be applied prospectively, its prescription is inferable from the enabling statutory authorization. N.J.S.A. 26:2H-7. Moreover, it reflects an administrative policy that was previously expressed in N.J.A.C. 8:33-1.5(d)(3) and does not constitute a material and significant change from a clear, past agency position. In the latter context, we emphasize that the Department's past policy "was itself equivocal, was not officially endorsed, and was not definitively settled." Airwork Ser. Div., etc. v. Director, Div. of Taxation, 97 N.J. 290, 301 (1984), cert. den. ___ U.S. ___, 105 S.Ct. 2662, 88 L.Ed.2d 278 (1985). We have taken great pains to describe the historical context within which the Commission acted. This historical overview clearly discloses that the Commission had no occasion to consider the applicability of the certificate of need requirement to providers of inpatient CT scanning and MRI services until the Department, prompted by changes in federal law, adopted its "rebundling" policy. The Department's failure to vigorously apply N.J.A.C. 8:33-1.5(d)(3) prior to that time does not derogate against the policy ultimately adopted by the Commission. Finally, the policy is intended to apply only to a narrow select group. Although the statement undoubtedly has broad ramifications, it does not encompass a large segment of the regulated public.
In reaching our conclusion, we are not unmindful of the important public policies advanced by the safeguards established *560 under the Administrative Procedure Act. Nevertheless, we also recognize that administrative agencies must possess the ability to be flexible and responsive to changing conditions. Texter v. Human Services Dept., supra, 88 N.J. at 385 (1982). This flexibility "includes the ability to select those procedures most appropriate to enable the agency to implement legislative policy." Ibid. Toward that end, "courts and commentators have encouraged hybrid agency proceedings as a way of producing more reasoned agency decisions, especially in complex and controversial policy areas." Ibid. While this discretion is not unlimited, we must defer to the choice made so long as the selection is responsive to the purpose and function of the agency. Id. at 385-386. We perceive no justifiable basis to disturb the agency's determination here. N.J. Sch. Bds. Ass'n v. State Health Ben. Comm'n, 183 N.J. Super. 215 (App.Div. 1981); Equitable Life Mort. v. N.J. Div. of Taxation, 151 N.J. Super. 232 (App.Div. 1977).

II
We next consider appellant's argument that the Commission's policy statement improperly purports to regulate a physician's private practice. More specifically, it contends that the Commission's authority to issue a certificate of need does not extend to services rendered by a physician outside of the hospital. Although phrased in a variety of ways, appellant claims that the Health Care Facilities Planning Act does not authorize the Department to regulate the services provided by a physician in his private office and that the policy statement of the Commission, thus, constitutes an ultra vires act.
We fully agree that the Act does not authorize the Department to regulate a physician's private practice. That question was authoritatively decided in Marsh v. Finley, 160 N.J. Super. 193 (App.Div. 1978), certif. den. 78 N.J. 396 (1978). There we held that the Commissioner could not compel a physician to obtain a certificate of need as a condition to his *561 impending purchase of computerized axial tomagraphy equipment "for his private office." Id. at 195, 200. We rested our decision upon the definition of "health care facility" set forth in N.J.S.A. 26:2H-2a. That section defines the phrase in terms of a "facility or institution whether public or private, engaged principally in providing services for health maintenance organizations ... or central services facility serving one or more such institutions...." N.J.S.A. 26:2H-2a. In arriving at our conclusion, we emphasized the legislative history which persuasively demonstrates a "purpose ... to regulate and control the cost of `institutional' health care...." Marsh v. Finley, supra, 160 N.J. Super. at 197. We noted that the legislative statement which accompanied the Act was "permeated" with references to "institutions." Ibid. We also made specific reference to the definition of "health care services" contained in N.J.S.A. 26:2H-2b which expressly excludes "services provided by a physician in his private practice...." Marsh v. Finley, supra, 160 N.J. Super. at 199. We, thus, concluded that the Act was not designed "to regulate the private practice of medicine by a physician." Id. at 197.
The short answer to appellant's argument is that our opinion in Marsh v. Finley, supra, did not deal with the provision of CT scanning or MRI services furnished to inpatients of a hospital. We emphasize that we were concerned in Marsh with a physician's acquisition of major medical equipment for use in his private practice. Requiring a certificate of need under such circumstances would neither bear upon nor materially advance the clearly expressed legislative objective to "help stem the rising cost of hospital care in New Jersey." Id. at 198.
In contrast, a physician who enters into an agreement with a hospital to render CT scanning or MRI services to inpatients clearly provides hospital services. The services performed constitute an integral component of hospital inpatient care. As such, the services rendered are but an adjunct to the institutional care provided to the patient. Under these circumstances, we are convinced that the equipment employed by the physician *562 falls within the purview of the phrase "central services facility serving one or more such institutions." N.J.S.A. 26:2H-2a (emphasis added).
We, therefore, find that N.J.A.C. 8:33-1.5(d)(3), which requires a certificate of need as a precondition to acquisition of major medical equipment to be used to provide services to inpatients of a hospital, fully comports with the Act and that the Commission's adoption of the Department's policy statement barring reimbursement to providers who have not complied with this requirement is entirely consistent with the statutory scheme.
Accordingly, the Commission's determination is affirmed.
NOTES
[1] CT refers to computerized tomagraphy scanners. MRI refers to magnetic resonance imaging.
[2] The monetary threshold of $150,000 was subsequently raised to $400,000. 42 U.S.C. § 300n(7).
[3] The Department is designated by the Legislature as the "sole agency" for comprehensive planning under the National Health Planning and Resources Development Act of 1974. N.J.S.A. 26:2H-1.
[4] "Rebundling" refers to a system of billing where all items and non-physician services are charged through the hospital.