795 A.2d 318 (2002)
350 N.J. Super. 369
In the Matter of the APPLICATION OF THE TOWNSHIP OF JACKSON, a Municipal Corporation of the State of New Jersey, Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 18, 2002.
Decided April 24, 2002.
*319 Ronald C. Morgan argued the cause for appellant Jackson Township (Parker, McCay & Criscuolo, attorneys; Stacy L. Moore, Jr., of counsel; Mr. Morgan, on the brief).
William P. Malloy, Deputy Attorney General, argued the cause for respondent Council on Affordable Housing (David Samson, Attorney General of New Jersey, attorney; Patrick DeAlmeida, Deputy Attorney General, of counsel; Mr. Malloy, on the brief).
Before Judges HAVEY, COBURN and WEISSBARD.
The opinion of the court was delivered by HAVEY, P.J.A.D.
This appeal concerns the interpretation by the Council on Affordable Housing (COAH) of § 307e of the Fair Housing Act (FHA), N.J.S.A. 52:27D-301 to -329. Section 307e caps a municipality's "fair share" obligation at 1,000 units "within six years from the grant of substantive certification, unless it is demonstrated, following ... an evidentiary hearing ... that it is likely that the municipality through its zoning powers could create a realistic opportunity for more than 1,000 low and moderate income units within that six-year period."
The matter comes before us as a result of an interpretation of § 307e by COAH, which was issued in response to an inquiry by Philip Caton, the Master appointed by Judge Serpentelli in a declaratory judgment action instituted by appellant, Township of Jackson, see N.J.S.A. 52:27D-313a, in which Jackson seeks approval of its second cycle fair-share obligation. Caton asked COAH for a written explanation as to how the 1,000 unit cap would be applied to Jackson's second cycle fair-share obligation, which had been fixed at 1,323. Jackson devised a plan for 1,165 units. Judge Serpentelli has elected to withhold any decision on Jackson's declaratory judgment action pending COAH's decision.
*320 By letter dated November 1, 1999, COAH responded to Caton by stating that the 1,000 unit cap applied to a municipality's "calculated need," not its pre-credited need; that is, if, after applying applicable credits and reductions, Jackson's fairshare number is more than 1,000, "it is capped at 1,000." Jackson moved for reconsideration. By written opinion dated May 3, 2000, COAH reaffirmed its prior determination that the 1,000 unit cap applied to a municipality's calculated, not pre-credited need, and therefore stated that Jackson's entitlement to cap relief depended upon whether its calculated need exceeded 1,000 units. Jackson has appealed COAH's determination.

I
Preliminarily, strictly speaking Jackson's appeal is not from a final decision of a State agency. See R. 2:2-3(a)(2). Jackson appeals from an advisory opinion by COAH given in order to guide the Law Division in a pending declaratory judgment action. See N.J. Civil Serv. Ass'n v. State, 88 N.J. 605, 612, 443 A.2d 1070 (1982) (opinions of an administrative agency on which no action is taken do not constitute final agency action which may be appealed as of right). Jackson should have awaited entry of a final judgment in the Law Division and then appeal as of right. R. 2:2-3(a)(1). The appeal is inconsistent with the policy of the Supreme Court that all Mount Laurel issues should be decided in one proceeding, with a single appeal. So. Burlington Cty. N.A.A.C.P. v. Tp. of Mount Laurel, 92 N.J. 158, 290, 456 A.2d 390 (1983) (Mount Laurel II). Nevertheless, for the purpose of resolving the narrow issue before us, whether the 1,000 unit cap applies to pre-credited or calculated need, we treat the appeal as a motion for leave to appeal and grant the motion. R. 2:4-4(b)(2).
Section 307e caps a municipality's "fair share" at 1,000 units. The term "fair share" is undefined by the FHA and COAH regulations, despite the fact that it is at the heart of the Mount Laurel doctrine. In defining the municipalities' constitutionally-mandated obligation to provide affordable housing, the Court in Mount Laurel II acknowledged that a judicially-imposed remedy to such housing could result in the "construction of lower income housing in such quantity as would radically transform the municipality overnight." 92 N.J. at 219, 456 A.2d 390. The Court stressed that the Mount Laurel doctrine was not intended to "sweep away all land use restrictions or leave our open spaces and natural resources prey to speculators." Ibid. After setting forth the parameters of the doctrine and procedure to carry it out, the Court ultimately encouraged legislative initiatives to implement the doctrine. Id. at 212-13, 352, 456 A.2d 390.
The legislative response was the FHA, L. 1985, c. 222. Section 307e, as initially enacted, authorized COAH to place a limit on the number of units allocated to a municipality based on a percentage of existing housing stock and other criteria. N.J.S.A. 52:27D-307c(2)(b) authorized COAH to adopt guidelines to address the potential that an "established pattern of development in the community [may] be drastically altered." Obedient to the legislative mandate, in May 1987, COAH adopted N.J.A.C. 5:92-7.1 which, provided in applicable part:
After receiving the crediting provided in Subchapter 6, Credits, where a municipality's present and prospective fair share exceeds 1,000 low and moderate income housing units, the municipality may adjust its fair share to 1,000.

[19 N.J.R. 806(a).]
*321 In Calton Homes, Inc. v. Council on Affordable Hous., 244 N.J.Super. 438, 447-48, 582 A.2d 1024 (App.Div.1990), certif. denied, 127 N.J. 326, 604 A.2d 601 (1991), we invalidated N.J.A.C. 7:92-7.1(b) because it was not based on any "criteria," observing that:
By granting the Council the power to base its fair share limits upon any criteria "which the [C]ouncil deems appropriate," N.J.S.A. 52:27D-307e, the Legislature could not have intended to convey unbridled discretion to select an absolute cap on the number of units to be built without first considering the burden imposed on the petitioning municipality and its relationship to other municipalities sharing the burden of providing regional and statewide housing needs. See generally Mount Laurel II, 92 N.J. at 219, 456 A.2d 390. [Id. at 448, 582 A.2d 1024.]
The Legislature responded by adopting the present text of § 307e which adds criteria correlating a 1,000 unit cap with a municipality's capacity to absorb a substantial amount of affordable housing. L. 1993, c. 31, effective January 29, 1993. Thus, COAH adopted the present rule, N.J.A.C. 5:93-14.1, which reads as follows:
No municipality shall be required to address a fair share beyond 1,000 units within six years from the grant of substantive certification, unless it is demonstrated, following an objection and an evidentiary hearing, based upon the facts and circumstances of the affected municipality that it is likely that the municipality through its zoning powers could create a realistic opportunity for more than 1,000 low and moderate income units within the six year period. The facts and circumstances which shall determine whether a municipality's fair share shall exceed 1,000 units shall be a finding that the municipality has issued more than 5,000 certificates of occupancy for residential units in the six year period preceding the petition for substantive certification.
Jackson claims that "fair share" under § 307e equates to "pre-credited need." "Pre-credited need" is defined as "the municipal low and moderate income housing obligation resulting from subtracting filtering, residential conversion and spontaneous rehabilitation from the sum of indigenous need, reallocated present need, prior cycle prospective, prospective need and demolitions." N.J.A.C. 5:93-1.3. In other words, COAH calculates pre-credited need by adding and deducting "secondary sources of demand and supply," such as demolitions, filtering, residential conversions and spontaneous rehabilitation. N.J.A.C. 5:93-2.13.
The major difference between the first cycle and second cycle regulations is that the second cycle formula factors in "priorcycle prospective need," N.J.A.C. 5:93-2.13, which is defined as "that portion of the 1987 1993 prospective need included in the 1987-1999 low and moderate income housing need calculations." N.J.A.C. 5:93-1.3. COAH elected to employ this "cumulative" methodology for the 1987-1999 cycle. It did so because the data from the 1990 census, which COAH relies upon in calculating housing need, showed a significant drop in the overall state-wide need for affordable housing, based in large part on growth that did not occur. See Morris Cty. v. Riverview Condominiums, Inc., 304 N.J.Super. 322, 336-37, 700 A.2d 884 (App.Div.1997), certif. denied, 152 N.J. 364, 704 A.2d 1299 (1998).
As noted, in this case, COAH interpreted the 1,000 unit cap as applying to calculated, not pre-credited need. A municipality's "calculated need" is the number determined by "subtracting adjustments, reductions, credits, bonuses, prior cycle *322 credits and the 20 percent cap from the precredited need." N.J.A.C. 5:93-1.3. See also N.J.A.C. 5:93-2.17. For example, COAH allows a "one-for-one reduction" from pre-credited need "for affordable housing activities undertaken from 1987 to 1993 as part of a COAH certified or court settlement plan." N.J.A.C. 5:93-2.14. Likewise, under prior-cycle credits, a "one-for-one credit shall be granted for low- and moderate-income housing constructed between April 1, 1980 and December 15, 1986 that conforms to [certain] criteria...." N.J.A.C. 5:93-2.15. The twenty percent cap applies where a municipality's calculated need could result in new construction that would exceed twenty percent of a municipality's estimated 1993 occupied housing stock. N.J.A.C. 5:93-2.16(a). The various credits and reductions are further defined in N.J.A.C. 5:93-3.1 to -3.6.
In ruling that the 1,000 unit cap applied to calculated need, not pre-credited need, COAH emphasized two factors. First, it notes that in Calton Homes, supra, 244 N.J.Super. at 445, 582 A.2d 1024, we equated a municipality's "fair share number" with pre-credited need minus "a variety of credits, caps and adjustments...." Second, COAH relied on its own 1989 determination that the number of units that could be transferred pursuant to a regional contribution agreement was based on calculated need, not pre-credited need. See In re Parsipanny Troy Hills Tp., decided April 24, 1989. COAH reasoned that it would be inconsistent with its own past practice and with the court's calculations in Calton Homes to equate "fair share" with "pre-credited need."
COAH's decision, like that of any administrative agency, must stand unless arbitrary or capricious. In re Warren Tp., 132 N.J. 1, 26, 622 A.2d 1257 (1993); Van Dalen v. Washington Tp., 120 N.J. 234, 244, 576 A.2d 819 (1990); Williams v. Dep't of Human Servs., 116 N.J. 102, 107, 561 A.2d 244 (1989). The Court has repeatedly noted COAH's broad discretion to implement its statutory mandate. Warren Tp., supra, 132 N.J. at 27, 622 A.2d 1257; Holmdel Builders Ass'n v. Holmdel Tp., 121 N.J. 550, 577, 583 A.2d 277 (1990); Van Dalen, supra, 120 N.J. at 245, 576 A.2d 819; Hills Dev. Co. v. Bernards Tp., supra, 103 N.J. at 32, 510 A.2d 621 (1986). This broad power includes wide latitude in determining standards and procedures for how many affordable units are required to meet a municipality's fair share, Van Dalen, supra, 120 N.J. at 246, 576 A.2d 819, and in establishing standards for compliance with the fair share. Holmdel Builders Ass'n, supra, 121 N.J. at 577, 583 A.2d 277. The Court has also acknowledged that the novelty of the legislation demands that courts give COAH wide latitude in carrying out its statutory duties. Van Dalen, supra, 120 N.J. at 246, 576 A.2d 819.
Based on the limited record before us, we cannot conclude that COAH's ruling is arbitrary, capricious or unreasonable, or inconsistent with the statutory guidelines under the FHA. As demonstrated by the Parsipanny-Troy Hills decision, COAH has consistently equated fair share with calculated need. Moreover, the original 1,000 unit cap regulation adopted by COAH specified that the cap applied to municipalities whose fair share exceeds 1,000 "[a]fter receiving the crediting provided in [ N.J.A.C. 5:92-6] Credits." N.J.A.C. 5:92-7.1(b). In addition, as noted in Calton Homes, supra, 244 N.J.Super. at 445, 582 A.2d 1024, we interpreted COAH's methodology equating fair share as pre-credited need minus a variety of credits and adjustments. Finally, "calculated need" is the figure that "municipalities shall address in their housing elements," *323 N.J.A.C. 5:93-2.1(a), the figure that truly reflects the municipality's obligation to provide for affordable housing.
The Legislature, in amending the statute in 1993, is presumed to have been aware of the Calton Homes decision, the then extant COAH rule, and COAH's own interpretation of the legislation. See Chase Manhattan Bank v. Josephson, 135 N.J. 209, 227, 638 A.2d 1301 (1994); In re Estate of Gillmore, 101 N.J.Super. 77, 86, 243 A.2d 263 (App.Div.), certif. denied, 52 N.J. 175, 244 A.2d 304 (1968). It may be assumed that it concurred with the Appellate Division's and agency's interpretation that pre-credited need less appropriate credits and adjustments constituted the municipality's "fair share."
Jackson's principal argument before us is that COAH's interpretation ignores the first sentence of § 307e which authorizes COAH, in its discretion, to place a limit "upon the aggregate number of units which may be allocated to a municipality as its fair share...." (Emphasis added). We understand this argument to mean that the word "aggregate" is equivalent to pre-credited need.
However, the word "aggregate" was not added to the 1993 amendment; it was part of the FHA when originally enacted. See L. 1985, c. 222, § 7(e). Moreover, by its very terms, § 307e permits COAH to place limits on the aggregate number of units which may be allocated to a municipality, but does not require COAH to do so. Further, Jackson's argument amounts to what is in essence a facial challenge to the validity of the rule, a challenge we should not address here, considering the manner by which the issue is before us. Indeed, the present record does not disclose how COAH's advisory opinion will operate in Jackson's case. We do not even know what Jackson's calculated need is.
In addition, COAH or a court may always invoke COAH's waiver rule so as to avoid the prospect of a municipality having to dramatically alter its character if it is required to construct more than 1,000 units within a six-year period. COAH may grant waivers from a specific rule upon a showing that: (1) such a waiver fosters the production of low and moderate income housing; (2) the waiver fosters the intent of, if not the letter of, COAH's rules; or (3) the strict application of the rule would create an unnecessary hardship. N.J.A.C. 5:93-15.1(b).
We reject Jackson's argument that COAH's interpretation regarding the 1,000 unit cap requires formal rulemaking under Metromedia, Inc. v. Dir., Div. of Tax., 97 N.J. 313, 478 A.2d 742 (1984). The methodology employed by COAH's expert, Dr. Robert W. Burchell, addressed two discrete issues: (1) how the 1,000 unit cap, which is for a six-year period, relates to the council's twelve-year cumulative methodology; and (2) whether the cap should be applied to pre-credited or calculated need. The first issue involves COAH's employment of a "cumulative" methodology in that it accounts for the actual housing activity that occurred during COAH's 1987-1993 fair-share cycle. COAH emphasizes the necessity of having the new methodology correct projections and assumptions made during that cycle in order to reflect the most current information available as to what housing activity occurred between 1987 and 1993, and the need to incorporate this information into the calculation of the 1993-99 cycle cumulative fair-share obligation. See Prior-Cycle Prospective Need (1987-1993), N.J.A.C. 5:93 App. A and N.J.A.C. 5:93-2.8.
The methodology employed by Dr. Burchell in addressing this first issue may indeed require rulemaking because of its novelty and complexity, and because it *324 may apply to other municipalities. Metromedia, Inc., supra, 97 N.J. at 331-33, 478 A.2d 742. However, Jackson has not demonstrated clearly how this methodology impacts, if at all, on its declaratory judgment action pending in the Law Division. Further, because this matter reaches us on an interlocutory basis, we decline to decide whether the expert's complex methodology requires rulemaking in this case. We note that any interested party may petition COAH to adopt appropriate rules if it considers rulemaking necessary. See N.J.S.A. 52:14B-4(f).
We reject Jackson's argument that rulemaking is necessary to implement the second issue addressed by Dr. Burchell, adopted by COAH, that under § 307e, the calculated need, rather than the pre-credited need, represents a municipality's "fairshare." Agencies have wide discretion to act through rulemaking, adjudication, or informally, and ordinarily we defer to the procedures chosen by the agency to discharge its statutory duty. In re Solid Waste Util. Customer List, 106 N.J. 508, 518-19, 524 A.2d 386 (1987). In our view, COAH's interpretation is "simply a reaffirmation" of requirements already set forth in existing regulations, and thus does not constitute "rulemaking." Radiological Soc'y of N.J. v. Dep't of Health, 208 N.J.Super. 548, 559, 506 A.2d 755 (App. Div.), certif. denied, 104 N.J. 444, 517 A.2d 434 (1986). COAH's interpretation may be inferable from the statute since the Legislature adopted the present 1,000 cap rule without rejecting Calton Homes' equating "fair share" with pre-credited need minus adjustments, reductions and credits, and COAH's own previous methodology employed in its Parsipanny-Troy Hills decision. Moreover, the interpretation is consistent with rules requiring that the housing element and fair-share plan should be tailored to meet calculated need, not pre-credited need. N.J.A.C. 5:93-2.1(a). Consequently, its interpretation was at least inferentially expressed in its prior determinations. Metromedia, Inc., supra, 97 N.J. at 332,478 A.2d 742.
Affirmed.