UNITED HUNTERS ASSOCIATION OF NEW JERSEY, INC.,
*ET AL.*, PLAINTIFFS-RESPONDENTS, v. H. MAT ADAMS,
COMMISSIONER OF THE DEPARTMENT OF CONSER-
VATION AND ECONOMIC DEVELOPMENT OF THE
STATE OF NEW JERSEY, *ET AL.*, DEFENDANTS-APPEL-
LANTS.

Argued January 9, 1962—Decided January 12, 1962.

Mr. *David D. Furman,* Attorney General of New Jersey, argued the cause for defendants-appellants (Mr. *Marvin M. Wodlinger,* Deputy Attorney General, on the brief).

Mr. *James G. Aiken* and Mr. *Owen N. Eisenberg* argued the cause for plaintiffs-respondents.

The opinion of the court was delivered

PER CURIAM. Defendants challenge the judgment of the Appellate Division setting aside a regulation providing for a "hunter's choice day" throughout the State. Because of the time factor, we directed argument upon the merits pending action upon the petition for certification, to the end that if the petition should be granted, a final disposition would be expedited.

The petition is hereby granted.

We are constrained to hold the Appellate Division departed from settled principles relating to judicial review of *quasi*-legislative actions of an administrative agency.

Following extensive hearings the Fish and Game Council voted 7 to 2 for a one-day deer season in which it would be

legal to kill deer of either sex, without regard to age, subject to specified bag limits. The Council acted pursuant to *N. J. S. A.* 13:1B–30 which reads:

"For the purpose of providing an adequate and flexible system of protection, propagation, increase, control and conservation of fresh water fish, game birds, game animals, and fur-bearing animals in this State, and for their use and development for public recreation and food supply, the council is hereby authorized and empowered to determine under what circumstances, when and in what localities, by what means and in what amounts and numbers such fresh water fish, game birds, game animals, and fur-bearing animals, or any of them, may be pursued, taken, killed, or had in possession so as to maintain an adequate and proper supply thereof, and may, after first having determined the need for such action on the basis of scientific investigation and research, adopt and from time to time amend and repeal such appropriate and reasonable regulations concerning the same, or any of them, penalties for the violation of which are prescribed by certain of the sections of Title 23 of the Revised Statutes amended herein, as it deems necessary to preserve, properly utilize or maintain the best relative number of any species or variety thereof, at the times, in the manner and to the extent hereinafter provided. The regulations so established shall be called the State Fish and Game Code."

A similar regulation adopted in 1958 was set aside in *United Hunters Association of New Jersey v. Bontempo,* 53 *N. J. Super.* 181 (*App. Div.* 1958). There it was held the "need" for such action was not based on "scientific investigation and research." In the present case, the Appellate Division found the requirement for investigation and research of that quality was met but held the regulation was unsupportable with respect to the southern part of the State.

The Council is charged by statute with the maintenance of "an adequate and proper supply" of deer, and is empowered to make such regulations "as it deems necessary to preserve, properly utilize or maintain the best relative number." The utilization contemplated in express terms is "for public recreation and food supply." A "proper" supply calls for an appraisal in which regard is had for the continuance of the herd, the maintenance of its health and vigor, the opportunity for recreation and food supply, the property damage

caused by deer, and also the hazard to the motorist, a hazard which the rising number of car-kills in the southern and northern portions of the State serves to emphasize.

The Council concluded (1) the herd was at or near its ecological saturation point and (2), in any event, a healthier herd, no less in total number, would be achieved throughout the State by an all-deer harvest rather than one limited to bucks of a minimum age.

The first conclusion involved an evaluation of data, a subject upon which experts may and here did disagree. The Council found the herd in South Jersey has been relatively static in size (about 10,000) as revealed by annual spring counts, sex ratios and kills. It concluded the herd was at or near its ecological saturation point upon the basis of an examination of sex ratios in the herd, age, annual harvest, car-kills and reproduction rate. As to this the Council found:

"* * * despite our previous bucks-only seasons, the average age of all does is only one year more than that of bucks, indicating the pressure from the recruitment of young animals is forcing out older ones; 95% of all deer in New Jersey are 4 years old or younger, despite the fact that deer can live to be 12; the harvest in the past 25 years fluctuated only between 2,034 and 7,747 (minima and maxima) in the whole state, and fluctuation in South Jersey has been much less (1,185-2.383, minima and maxima) ; car kills have increased greatly, except in those counties which had the 1959 hunter's choice season—there were 305 deer killed by autos in South Jersey in 1958 but 564 last year, an increase of 85%, as compared to those counties which had an antlerless season where cars killed 1,327 before and 1,447 after, *an increase of only 9% as compared to 85%*; the reproduction rate (embryos per female) is less in South Jersey than in North Jersey for adult does, but almost identical for fawn does, indicating not a racial differential, but a lower carrying capacity of South Jersey range. Further, the saturation point in the south is much lower than on the better range in the north.

Accepting as we do this ecological viewpoint, any theoretical carrying capacity of land is not of great significance to us. This is particularly true since we feel deer dynamics are such that if the ecological carrying capacity increases in the future, the deer will rapidly increase and reach the capacity."

With respect to the second basic finding we referred to above, the Council accepted the so-called "modern" theory

that the killing of bucks alone produces an unnatural balance; that after a hunter's choice day, "it is expected that the sex and age of the deer in the herd will more closely correspond with the ratio found in nature"; and that the end result should be a healthier and sturdier herd.

In short, the Council concluded that a hunter's choice day would harvest deer which now succumb to other perils, and would restore a proper balance which should yield a better herd no smaller in size than that produced under a policy of hunting adult bucks only.

There was division of opinion within the agency's staff itself. The Council of necessity had to choose between contending views. The issue before us is not whether one theme has greater appeal than the other. If a subject is debatable, the agency determination must be upheld. Quite obviously, if we were to decide the underlying merits, we would thereby perform the administrative function itself. Upon that approach the court would become the legislative body. The judiciary can interfere with such a determination only when it is plainly demonstrated to be arbitrary. The most that here is revealed is that men can earnestly disagree. This being so, the Council alone bears the responsibility for decision. It is not for the judiciary to agree or disagree. See *In re Public Service Electric & Gas Co.*, 35 *N. J.* 358, 376 (1961); *Two Guys from Harrison, Inc. v. Furman*, 32 *N. J.* 199, 229 (1960); *Kozesnik v. Township of Montgomery*, 24 *N. J.* 154, 167 (1957).

The judgment of the Appellate Division must therefore be reversed with directions to enter judgment in favor of defendants.

A further question arises by virtue of the time consumed by this litigation. December 20, 1961 had been fixed for the hunter's choice day. Following the decision of the Appellate Division, the Council substituted January 31, 1962. The resolution stated the purpose was to prevent the controversy from becoming moot and thus precluding a review by this court.

■ The controversy is not moot, since the public problem persists. Generally speaking, when litigation bars performance upon a date theretofore fixed, a new date may be specified by the appropriate authority. *Cf. Pappas v. Malone,* 36 *N. J.* 1, 7 (1961).

■ The question is whether the new date is inappropriate because of ensuing circumstances. We have no record upon the subject. Plaintiffs assert the antlers will have fallen by January 31, that the deer will be weakened by the rigors of the season, and the does additionally slowed down by advanced pregnancy. Thus plaintiffs suggest the new date requires further consideration in terms of sportsmanship as well as the extent of the probable kill. The issue seems to us to be peculiarly one for the Council's final evaluation. Nonetheless, a public hearing upon the appropriateness of the new date seems to be indicated. We suggest the Council hold such a hearing on short public notice, notwithstanding the general statutory requirement as to the length of notice. Our mandate will issue at once to the end that the Council may promptly initiate that step.

The judgment of the Appellate Division is reversed and the matter remanded with directions to enter a final judgment in favor of defendants. Mandate shall issue forthwith. No costs.

HANEMAN, J., votes to affirm on the ground that the action of the Council was arbitrary, essentially for the reasons given by the Appellate Division.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—Justice HANEMAN—1.