HUMANE SOCIETY OF THE UNITED STATES, NEW JERSEY BRANCH, INC., A CORPORATION OF THE STATE OF NEW JERSEY; DEER, ECOLOGY ENVIRONMENT AND RESOURCES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, APPELLANTS, v. ALFRED T. GUIDO, DIRECTOR OF THE DIVISION OF PARKS AND FORESTRY, A DIVISION OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION AND THE DIVISION OF PARKS AND FOREST-RY, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 7, 1980—Decided April 2, 1980.

224

Before Judges SEIDMAN, MICHELS and DEVINE.

*William J. Fiore* argued the cause for appellants (*Meyner* and *Landis,* attorneys).

*John M. VanDalen,* Deputy Attorney General, argued the cause for respondents (*John J. Degnan,* Attorney General of New Jersey, attorney; *Stephen Skillman,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

MICHELS, J. A. D.

Appellants Humane Society of the United States, New Jersey Branch, Inc. (Humane Society) and Deer, Ecology Environment and Resources, Inc. (DEER, Inc.) appeal from an action of respondents Alfred T. Guido, Director of the Division of Parks and Forestry, Department of Environmental Protection (Director) and the Division of Parks and Forestry (Division), allowing a one-day special controlled deer hunt to take place in parts of High Point Park. Appellants challenged the validity of the order authorizing the hunt, which took place on December 14, 1978.

The facts essential to a resolution of the issues raised on this appeal are not in dispute. High Point Park was created in 1923 when the State of New Jersey accepted a grant from Anthony B. Kuser and Susie Dryden Kuser of over 12,000 acres of land located in Sussex County, New Jersey. See *N.J.S.A.* 13:5–5 (*L.* 1923, *c.* 36, § 4) [1924 Suppl. §§ 165–201]). The deeds from the

Kuser family which conveyed the property to the State do not restrict the State's management of the property in any way except as follows:

. . . neither shooting of birds nor trapping of birds other than vermin shall be permitted on the premises herein conveyed; shooting of vermin shall be done only by the authorized representatives of the State of New Jersey or of such commission as shall have custody of the grounds; and no hospital, sanatarium or institution for the care or treatment of mental or physical defects or diseases shall be maintained on the said premises within a radius of four miles from that high point of land commonly known as "High Point".

The restrictions on the hunting of birds or the maintenance of certain state institutions set forth in the deeds conveying the property to the State were also embodied in the legislation establishing High Point Park. See *N.J.S.A.* 13:5–6 and *N.J.S.A.* 13:5–9 (*L.*1923, *c.* 36, §§ 4 and 5 [1924 Suppl. §§ 165–201]).

Over the years the High Point Park Commissioners and the Division [1], the agencies that have managed or presently manage High Point Park, have not permitted hunting except for the one-day special deer hunt which gave rise to this appeal. However, the State Fish and Game Code, adopted pursuant to *N.J.S.A.* 13:1B–29 *et seq.*, by the Fish and Game Council, Division of Fish, Game and Shellfisheries, Department of Environmental Protection, has for some time permitted the hunting of deer throughout Sussex County. In addition, the Fish and Game Code established December 14, 1978 as a special controlled hunt day wherein a limited number of permits would be issued for the anticipated harvest of a limited number of deer of either sex or of any age.

On October 31, 1978 Director Guido issued a press release announcing that the Division was considering a special con-

[1] In 1945 the functions, powers, duties and records of the Commissioners of High Point Park were transferred to the Division of Parks and Forestry. *L.* 1945, *c.* 22, § 24. See *N.J.S.A.* 13:1A–24 and *N.J.S.A.* 13:2–1.

trolled deer hunt for High Point Park. The press release referred to research conducted by the Division of Fish, Game and Shellfisheries showing a need for the hunt and specifically requested written comments on the proposal. The Fish, Game and Shellfisheries' report noted that overpopulation of deer was damaging vegetation within the park to such an extent that the habitats for many other species of wildlife were being threatened. The study found that there was evidence of deer starvation and dog predation at the park which could be alleviated by reducing the deer population. Therefore, the study recommended an extended controlled hunt as the most feasible means of lessening the deer overpopulation problem. Specifically, the study recommended both the regular six-day firearm buck season and the December 14, 1978 one-day either sex season for specifically delineated areas or zones within the park.

Numerous comments were received from the public in response to the hunting proposal. Many of these comments, including the objections submitted by DEER, Inc., were reviewed by Robert Lund, principal wildlife biologist of the Division of Fish, Game and Shellfisheries, who had developed the original report for the park. The Director, after considering the comments and Lund's report, found that there would not be any irreparable or immediate damage to the park or to the deer herd as a result of a controlled hunt. On the contrary, he believed that "a controlled hunt may limit deer damage and enhance my ability to protect the Park." The Director thereupon determined to open portions of High Point Park to a one-day special controlled deer hunt on December 14, 1978. Thereafter, the Division approved the hunt. Consequently, on November 21, 1978, the Department of Environmental Protection issued the following press release:

A special controlled deer hunt at High Point Park has been approved by DEP's Division of Parks and Forestry for a one-day antlerless season on December 14.

The purpose of the hunt is to provide information for better management of the park's ecological conditions, said Alfred T. Guido, director of the Division of Parks and Forestry. A study by DEP's Division of Fish, Game and Shellfisheries shows that the park's deer herd has become overpopulated resulting in a threat to vegetation and habitats for other wildlife species. (High Point has been closed to all kinds of hunting since the late 1920's).

Deer killed in the one-day hunt will be studied in an effort to improve management of the park. Public forums on the subject will be held early next year.

The special hunt will be limited to 8,667 acres located to the south and west of Route 23. Hunting is by registration only and the number of hunters is limited.

Humane Society and DEER, Inc. appealed and immediately moved to stay the hunt pending appeal. We denied the stay and appellants applied to the Chief Justice for emergent relief, which was denied "without prejudice to full litigation of appellants' appeal on the merits before the Appellate Division as to the validity of the present action and any future action by respondents regarding hunting at High Point State Park." The one-day controlled deer hunt was held on December 14, 1978 as scheduled.

## I

■ Preliminarily, we disagree with respondent's contention that the appeal is moot because the one-day special deer hunt has already taken place. The public interest warrants a resolution of the matter since the issues are of public importance and are bound to recur in the future. *State v. Allen,* 73 *N.J.* 132, 138–139 (1977); *John F. Kennedy Memorial Hospital v. Heston,* 58 *N.J.* 576, 579 (1971). *See, also, Busik v. Levine,* 63 *N.J.* 351, 364 (1973), app. dism. 414 *U.S.* 1106, 94 *S.Ct.* 831, 38 *L.Ed.2d* 733 (1973); *United Hunters Ass'n. of N.J., Inc. v. Adams,* 36 *N.J.* 288, 293 (1962). We turn therefore to the merits of the appeal.

## II

The primary thrust of appellant's attack upon the Director's action in authorizing the special deer hunt in High Point Park is that the legislation which created the park prohibits the hunting of all game. Appellants argue that this conclusion is compelled from a fair reading of the deed restrictions in the Kuser family grants which were adopted by the Legislature in accepting the property and from the contemporaneous construction placed on the statutes by the High Point Park Commissioner and by the Division which have continuously prohibited hunting in the park. We disagree. The deeds from the Kuser family are written in plain and unambiguous language. They do not restrict the State's use or control of the property in any way except to prohibit (1) the shooting and trapping of birds, other than vermin, and (2) the maintenance of certain state institutions within a four-mile radius of the highest point in the park. These restrictions were embodied in the enabling legislation which created and governs the use and operation of the park. *N.J.S.A.* 13:5–6, which pertains to *the terms and conditions of the Kuser deeds*, specifically provides:

The deed or deeds to the property described in section 13:5–5 of this title may contain terms and conditions that *there shall be no shooting or trapping of birds thereon, other than of vermin and then only by the authorized representatives of the state or of the board.* The deeds may also contain terms and conditions to the effect that state hospitals, sanitaria or institutions for the care or treatment of mental or physical defects or diseases may be maintained on the property; but not within a radius of four miles from the high point of land commonly known as the "High Point". [Emphasis supplied.]

Additionally, the Legislature, in conferring upon the High Point Park Commissioners the power to make rules and regulations for the governing and use of the park, expressly mandated that the Commissioners "shall, as a part of such rules and regulations, provide that there shall be no shooting or trapping

of birds thereon, other than of vermin and then only by the authorized representatives of the state or of the board." *N.J. S.A.* 13:5–9. In the light of the plain and unambiguous language of the Kuser deeds and aforesaid statutes, we have no hesitancy in concluding that our Legislature intended to prohibit only the shooting and trapping of birds, other than vermin. Simply stated, neither the Kuser deeds nor the statutes prohibit the hunting of deer in High Point Park.

Furthermore, while the contemporaneous construction of statutes by the enforcing agency may be persuasive where substantial doubts as to meaning are apparent on the face of the legislation, it has no relevance, nor is the doctrine applied, where, as here, there is no such ambiguity. *Loveladies Property, etc. v. Barnegat City, etc., Co.*, 60 *N.J.Super.* 491, 504 (App.Div.1960), certif. den. 33 *N.J.* 118 (1960). As was so appropriately stated in 6 *McQuillin, Municipal Corporations* (3 ed. 1969), § 20.45 at 121–122:

> . . . the point is well settled [that] the doctrine of contemporaneous or administrative construction has no application when the intention of the ordinance is plain, unambiguous and not susceptible to different or contrary reasonable construction.

Finally, we are thoroughly satisfied that the Division had the authority to permit the deer hunt in High Point Park. *N.J.S.A.* 13:1B–15.101(a) expressly empowers the Division to:

> Develop, improve, protect, manage and administer all State forests, State parks, State recreation areas, State historic sites, and State natural areas, excepting those regulated by interstate compact.

This grant of authority to the Division to manage and control the State's parks and forests must be construed liberally in order to enable it to fulfill its statutory responsibility and to that end "courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent." *New Jer-*

*sey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 562 (1978). *See In re Suspension of Heller,* 73 *N.J.* 292, 303 (1977).

In order to implement the specific provisions of *N.J.S.A.* 13:1B–15.101(a) and earlier enactments applicable to state lands, including parks and forests, a comprehensive management scheme has been developed. See *N.J.A.C.* 7:2–1.1 *et seq.* Several of these provisions incorporate guidelines necessary for management and administrative flexibility with regard to land use and hunting. Specifically, *N.J.A.C.* 7:2–2.2 provides:

> The State Park Service reserves the right to designate or direct any and all recreational or other use on its lands and waters and within its facilities to such specific areas or locations within or upon said lands, waters, and facilities as will be in the best interest of conservation, recreation, preservation, management and the health, safety, and welfare of all persons concerned.

*N.J.A.C.* 7:2–4.1(a) provides:

> Hunting, fishing, and trapping are permitted only on specifically designated lands and waters. All such use must be consistent with laws, rules and regulations, and other limitations set forth by the New Jersey Division of Fish, Game, and Shellfisheries.

Accordingly, since the Fish and Game Code permitted deer hunting in Sussex County, with December 14, 1978 having been established as the day for a special controlled deer hunt, the Director had the statutory and administrative power to open the park for the deer hunt.

### III

Appellants also contend that even if it were determined that the legislation does not prohibit deer hunting in the park, the Director's action in authorizing the hunt was procedurally defective. They claim that *N.J.S.A.* 13:1B–33 of the Fish and Game Code is binding upon the Director by virtue of *N.J.A.C.* 7:2–4.1 and therefore the Director was required to publish notice of the

proposed hunt in the *New Jersey Register* and to hold public hearings on the matter before taking any action.

While the provisions of the Administrative Code governing the use of state parks and forests under the jurisdiction of the Department of Environmental Protection and assigned to the Division require that hunting on designated state lands "be consistent with laws, rules and regulations, and other limitations set forth by the New Jersey Division of Fish, Game and Shellfisheries," *N.J.A.C.* 7:2–4.1, we do not construe this to require the Director to hold public hearings in compliance with *N.J.S.A.* 13:1B–33 or any other statutes before opening High Point Park for hunting. *N.J.S.A.* 13:1B–33 imposes upon the State Fish and Game Council, not the Director, the duty to hold public hearings prior to adoption of any regulation or amendment thereto, as clearly appears from its following provision:

> Prior to final adoption by the council of any regulation authorized to be established pursuant to the provisions of this article, or any amendment thereto or repealer thereof, the council shall hold a public hearing thereon. Notice of such hearing shall be filed with the Secretary of State at least twenty days prior to the hearing, and shall be published in the New Jersey Register if such Register be then required to be published by the Secretary of State, and in such other manner as the council shall determine, not less than fifteen days prior to the hearing. Such notice shall specify the time when and the place where such hearing will be held, together with the text of the proposed regulation, amendment or repealer.

The requirement of a public hearing is imposed upon the Fish and Game Council because it has the statutory duty to formulate policy for the protection and propagation of fish, birds and game in New Jersey, *N.J.S.A.* 13:1B–28, and to promulgate regulations known as the Fish and Game Code, prescribing "under what circumstances, when and in what localities, by what means and in what amounts," fish, birds and game ani-

mals, including deer, may be hunted.[2] *N.J.S.A.* 13:1B–30 and *N.J.S.A.* 13:1B–32. The record is clear that the Fish and Game Council held the statutorily mandated public hearings prior to promulgating the 1978–1979 Fish and Game Code. Thereafter the Fish and Game Council, acting in accordance with scientific investigative data, established both a general and a special one-day (December 14, 1978) deer hunting season, with precise limitations and projections for the number of hunters and the number of deer to be harvested in each of the deer management zones in New Jersey. The Director was not required to hold further public hearings before he authorized the deer hunt. To have done so would have been unnecessary duplication.

However, we do agree that prior to taking similar action in the future the Director should publish notice of such proposed hunt in the *New Jersey Register* and, as he did here, afford all interested persons reasonable opportunity to submit data, views or arguments, either orally or in writing, as required by *N.J.S.A.* 52:14B–4 of the Administrative Procedure Act.

We recognize that the Director's action authorizing the one-day special hunt in High Point Park may not fit precisely into the statutory definition of an "administrative rule," as set forth in *N.J.S.A.* 52:14B–2(e), because it was not of "general applicability" to all state parks and forests and was not of "continuing effect". Nonetheless, the action was a marked departure from a longstanding policy or practice to prohibit hunting in High Point

---

[2]However, while the Fish and Game Council is the state agency that prescribes the geographic areas in which the various forms of hunting may take place (for example, deer hunting in Sussex County) private or public property owners retain their inherent authority to decide if hunting will in fact take place on specific parcels of land. *N.J.S.A.* 23:7–1 *et seq., Humane Soc. of U. S. v. N. J. State Fish and Game Coun.*, 70 *N.J.* 565, 576–577 (1976).

Park, and had the potential to change in a substantial way, at least temporarily, the use and enjoyment of the park by the general public.

Affirmed.