STATE OF NEW JERSEY, PLAINTIFF, v. KEITH
KLEMMER, DEFENDANT.

Superior Court of New Jersey
Law Division Burlington County

Decided February 16, 1989.

*Jeanne T. Covert* for plaintiff (*Stephen G. Raymond,* Prosecutor of Burlington County, attorney).

*Thomas E. Doig, Jr.* for defendant.

HAINES, A.J.S.C.

This opinion concludes that the Intoxicated Driver Resource Centers ("IDRCs") are operating without any valid rules of procedure, and therefore, deny due process to persons who are sentenced to them.

Keith Klemmer was charged with drunk driving in violation of *N.J.S.A.* 39:4–50. On advice of counsel, he pled guilty before the Chesterfield Township Municipal Court. A mandatory minimum first offender sentence was imposed. The sentence included the statutory requirement that he spend 12 hours, over two days, at an Intoxicated Driver Resource Center and fulfill the conditions of any treatment program designed for him by the center.

Klemmer satisfied the 12–hour requirement and was then referred to the Mercer County Council on Alcoholism for further evaluation and direction as to participation in additional programs. Center personnel advised him that the referral was dictated by his background, age and involvement in construction work. At Mercer, after a brief exchange of questions, he was told that further counselling was required. He expressed his understanding that he was entitled to a further evaluation

but was told that once he was sent to the council further programs were expected. He was required to attend 15 counselling sessions at a cost of $35 each. In addition, he was to attend one Alcoholics Anonymous ("AA") meeting every week.

Klemmer executed a written "contract" with the council.. As to weekly AA meetings, it provided that "more may be required"; it also stated: "If additional assignments or treatment are called for, they must be completed for the client to be successfully released from the program." The agreement concluded: "For successful release from the program, all of the above criteria must be met. In addition, there must be a significant change in the client's attitude and behavior with regard to the use of alcohol and other drugs." Klemmer, after consulting an attorney, refused to comply with these program requirements.

As a result the IDRC forwarded a "noncompliance report" to Klemmer, the Division of Motor Vehicles and the Chesterfield Township Municipal Court. The Division, without further notice, in disregard of *N.J.S.A.* 39:5–30, *N.J.S.A.* 52:14B–11 and basic principles of due process, suspended his driver's license until he satisfied Bureau of Alcohol Countermeasures and IDRC requirements.

Klemmer, through counsel, applied here for the restoration of his license and a hearing with respect to the noncompliance report. This court, sitting as the Municipal Court of Chesterfield Township, issued an order reinstating the license and providing for the necessary hearing. It would have been improper for the municipal court judge, whose order subjected Klemmer to the IDRC proceedings, to consider the charge that his order had been violated. The non-compliance report, in effect, charged Klemmer with a contempt; if convicted, he would be imprisoned for two days. *N.J.S.A.* 39:4–50(b) provides that "failure to satisfy ... [IDRC] requirements shall result in a mandatory two-day term of imprisonment in a county jail" as well as suspension of driving privileges.

The alleged contempt did not take place "in the face of the court." "[C]ontempt in the face of the court is conduct that a judge can determine through his own senses is offensive and that tends to obstruct the administration of justice." *In Re Yengo*, 84 *N.J.* 111, 123 (1980). Klemmer's charge, therefore, had to be heard by a judge other than the judge who issued the IDRC order. *In re Ruth M. Buehrer*, 50 *N.J.* 501, 515 (1967).

Questions were raised at the contempt hearing concerning the constitutionality of the IDRC statute and procedures. Since these claims challenged the validity of the original municipal court sentence, counsel for Klemmer, at the court's suggestion, filed a notice of appeal from that sentence. The State did not object to this procedure.[1]

Notice of the constitutional challenges was given to the Attorney General who elected not to appear. He relied upon the county prosecutor for the defense of Klemmer's claims.

A. *The Mootness Question.*

Klemmer, his expert witness and IDRC personnel testified in the contempt—post-conviction proceedings. Briefs and oral argument were considered. Some weeks after the completion of hearings and the draft of an opinion, the court, concerned that counsel had not fully appreciated the potential consequences of a failure to publish IDRC rules, offered counsel an opportunity to submit further briefs on that issue. Shortly thereafter the Bureau of Alcohol Countermeasures sent the following letter, dated January 17, 1989, to Klemmer:

> Your case was sent out for second opinion. As you are aware, we offered you a second opinion. The second opinion indicated that although your case is borderline, on balance treatment is not necessary. We have informed the Mercer IDRC to withdraw the noncompliance report on you.

A copy of this letter was sent to the court by the prosecutor with a covering letter which stated in part:

---

[1]Note that *R.*3:22–4 would have permitted the same constitutional challenges to be advanced by way of a post-conviction proceeding.

I have received official correspondence indicating that Mr. Klemmer's case has been referred for a second opinion and has been reversed. The enclosure within may more fully elaborate the specifics of this decision.

As aftercare is no longer required, Mr. Klemmer is no longer in non-compliance and there is no longer a case in controversy on which to deliberate.

It would seem therefore, that the Klemmer case is moot and should be terminated.

The statement that Klemmer had been offered a second opinion is contrary to the record. The initiation of the letter decision is not authorized by any procedural rule governing IDRCs, a circumstance of no moment in an ordinary setting. No notice of any reconsideration of the non-compliance ruling was given to the court or, apparently, to Klemmer. The exonerating conclusion was reached after this court offered counsel the opportunity to provide further briefs addressing the publication issue. In fact, the rules were not published and, as this opinion later holds, that failure is fatal to the State's position.

These circumstances are troublesome. The State now seeks a dismissal of the proceedings on the ground that they are moot. Its 11th-hour maneuver appears to be designed to prevent a decision on the merits, although the prosecutor represents the bureau's action as reflecting a genuine concern for the fair treatment of Klemmer. However, Klemmer, notwithstanding the volunteered generosity of the State, presses for a decision on the central issues. That decision, under all the circumstances of this case, is one that he is entitled to receive.

In the first place, granting the motion to moot the IDRC issues in this case would ignore the State's obligation of fairness. In criminal and *quasi*-criminal cases the State, acting through the prosecutor, must see that justice is done. *State v. Grillo*, 11 *N.J.* 173, 184 (1952); *RPC* 3.8(a). In the present case, the State had two obligations: (1) to provide Klemmer with any relief to which he was entitled, and (2) to concede the unenforceability of its IDRC rules when that became apparent. Its first obligation to Klemmer was satisfied, though only in part, by its last minute letter. Its duty, however, was much

broader. IDRC procedures affect the public interest; as many as 25,000 persons a year are subjected to them. The public is entitled to know that these procedures are defective when that conclusion becomes clear. It would be highly improper for the State to subject DWI offenders to IDRC procedures knowing it had no right to do so. Such conduct would be contrary to every concept of fair play.

The Bureau of Alcohol Countermeasures does not control this controversy. Klemmer has attacked the validity of the sentence imposed upon him by a municipal court in the context of a judicial contempt proceeding brought by the State. That proceeding may not be dismissed without the consent of the court. *R.* 7:1 and *R.* 3:25–1. This court does not consent.

The bureau had no valid rules of procedure in force. Its exonerating action was taken without authority and was therefore a nullity. Klemmer's IDRC sentence was illegal. The IDRCs were operating without rules, and therefore, without due process. Klemmer served part of his sentence. He has the right to have that sentence corrected, the illegality erased. The rule, in a parole revocation setting, is set forth in *Bd. of Trustees of Youth Correct Cent. v. Davis,* 147 *N.J.Super.* 540 (1977):

> While the collateral legal consequences inherent in a conviction or probation revocation may be more serious than those resulting from a parole revocation, we cannot agree, as the weight of authority would have it, that they are so insubstantial as to be outweighed by the legitimate policy concerns underlying the mootness doctrine. It is true, of course, that a record of conviction, and to some extent of a probation revocation as well, has prejudicial civil connotations, whereas the parole revocation generally becomes of moment only if defendant finds himself subsequently caught up once more in the criminal process. But we believe that such a defendant is entitled to proceed through that process, including sentencing and future parole release applications, unprejudiced by an improperly founded prior parole revocation. See, generally, *Morrissey v. Brewer,* 408 *U.S.* 471, 92 *S.Ct.* 2593, 33 *L.Ed.*2d 484 (1972); and see *Blake v. Mass, Parole Board,* [369 *Mass.* 701,] 341 *N.E.*2d 902, 904 (Mass.Sup.Jud.Ct.1976). If the blemish on defendant's record of that parole revocation is subject to removal, the judicial process must afford him the opportunity to have it removed. [147 *N.J.Super.* at 543–544]

Davis' parole was revoked. He was reparoled before his appeal of the revocation was heard. Klemmer is in a different position. He has served part of his illegal sentence, a part which he should not have been forced to serve. He is in no different position than a person who, having served an entire unlawful prison sentence, seeks post-conviction relief erasing the record. He is entitled to that relief even though the sentence has been served. *Id.* at 543.

The Prosecutor argues that Klemmer will suffer no future adverse effects from the unlawful sentence now that his non-compliance charge has been withdrawn. The argument relies upon *Bd. of Trustees* in which the court said:

> The preservation of a defendant's right of appeal in these circumstances is predicated upon those considerations of due process and fundamental fairness which require that he be afforded an opportunity to protect himself from the future adverse effects inevitably implicit in a criminal conviction. [*Ibid.*]

Klemmer, however, like Davis, may be subjected to some future proceeding in which alcoholism plays a role. If so, his experience at the IDRC to which he was sentenced, especially the Mercer Council's requirement of further counselling and AA attendance, may provide adverse inferences. The "mootness" letter dismissing the non-compliance charge against Klemmer refers to him as a "borderline" case. He objects to that conclusion, which was reached without notice, supporting reasons or any opportunity for confrontation. He is entitled to have the IDRC record, including the "borderline" conclusion, expunged.

The validity of IDRC procedures is a matter of considerable public interest. As many as 25,000 convicted DWI offenders are sent to the centers annually. The courts utilize them every day. As our Supreme Court said in *United Hunters Assn. of N.J., Inc. v. Adams*, 36 *N.J.* 288 (1962): "The controversy is not moot, since the public problem persists." At 293. Furthermore, "a court may decide an issue even though the litigation has become moot, ... in the public interest." *Busik v. Levine,*

63 *N.J.* 351, 364 (1973). In *Humane Society of the U.S. v. Guido,* 173 *N.J.Super.* 223 (1980), the court said:

> Preliminarily, we disagree with respondent's contention that the appeal is moot ... The public interest warrants a resolution of the matter since the issues are of public importance and are bound to recur in the future. [at 228]

For all of these reasons this court concludes that the issues here are not moot and must be decided.

## B. *The Statute.*

*N.J.S.A.* 39:4–50 provides that a person having a ten percent blood alcohol concentration while operating a motor vehicle shall be subject:

> (a)(1) For the first offense, to a fine of not less than $250.00 nor more than $400.00 and a period of detainment of not less than 12 hours nor more than 48 hours spent during two consecutive days of not less than six hours each day and served as prescribed by the program requirements of the Intoxicated Driver Resource Centers established under Section (f) of this section and, in the discretion of the court, a term of imprisonment of not more than 30 days and shall forthwith forfeit his right to operate a motor vehicle over the highways of this State for a period of not less than six months nor more than one year.

It also provides:

> (b) A person convicted under this section must satisfy the screening, evaluation, referral, program and fee requirements of the Division of Alcoholism's Intoxicated Driving Programs Unit, and of the Intoxicated Driver Resource Centers and a program of alcohol education and highway safety, as prescribed by the Director of the Division of Motor Vehicles. The sentencing court shall inform the person convicted that failure to satisfy such requirements shall result in a mandatory two day term of imprisonment in a county jail and a driver license revocation or suspension and continuation of revocation or suspension until such requirements are satisfied, unless stayed by court order in accordance with Rule 7:8–2 of the N.J. Court Rules, 1969, or R.S. 39:5–22. Upon sentencing, the court shall forward to the Bureau of Alcohol Countermeasures within the Intoxicated Driving Programs Unit a copy of a person's conviction record. A fee of $80.00 shall be payable to the Alcohol Education, Rehabilitation and Enforcement Fund established pursuant to section 3, P.L. 1983, c. 531 (C. 26:2B–32) to support the Intoxicated Driving Programs Unit.

> . . . .

> (f) The counties, in cooperation with the Division of Alcoholism and the Division of Motor Vehicles, but subject to the approval of the Division of Alcoholism, shall designate and establish on a county or regional basis Intoxicated Drivers Resource Centers. These centers shall have the capability of serving as

community treatment referral centers and as court monitors of a person's compliance with the ordered treatment, service alternative or community service. All centers established pursuant to this subsection shall be administered by a certified alcoholism counsellor or other professional with a minimum of five years' experience in treatment of alcoholism. All centers shall be required to develop individualized treatment plans for all persons attending the centers; provided that the duration of any ordered treatment or referral shall not exceed one year. It shall be the center's responsibility to establish networks with the community alcohol education, treatment and rehabilitation resources and to receive monthly reports from the referral agencies regarding a person's participation and compliance with the program. Nothing in this subsection shall bar these centers from developing their own education and treatment programs; provided that they are approved by the Division of Alcoholism.

Upon a person's failure to report to the initial screening or any subsequent ordered referral, the Intoxicated Driver Resource Center shall promptly notify the sentencing court of the person's failure to comply.

Required detention periods at the Intoxicated Driver Resource Center shall be determined according to the individual treatment classification assigned by the Bureau of Alcohol Countermeasures. Upon attendance at an Intoxicated Driver Resource Center, a person shall be assessed a per diem fee of $50.00 for the first offender program or a per diem fee of $75.00 for the second offender program, as appropriate.

The centers shall conduct a program of alcohol education and highway safety, as prescribed by the Director of the Division of Motor Vehicles.

The Director of the Division of Motor Vehicles shall adopt rules and regulations pursuant to the "Administrative Procedure Act," P.L.1968, c. 410 (C. 52:14B-1 et seq.), in order to effectuate the purposes of this subsection.

## C. *Rules and Regulations.*

The New Jersey Department of Health deals with drunk driving responsibilities through its Division of Alcoholism. The Bureau of Alcohol Countermeasures, previously within the Department of Motor Vehicles, was transferred from that department to the Department of Health, pursuant to the requirements of *N.J.S.A.* 52:14D. The Intoxicated Driving Program Unit is the administrative unit of the IDRCs serviced by the Bureau of Alcohol Countermeasures.

*N.J.S.A.* 39:4–50 requires "the Director of the Division of Motor Vehicles ... [to] adopt rules and regulations pursuant to the 'Administrative Procedure Act', P.L.1968, c. 410 (C. 52:14B–1 *et seq.*), in order to effectuate the purposes of this subsection." The transfer of responsibilities from the Division

of Motor Vehicles to the Department of Health required the latter to adopt the required rules and regulations.

Rules covering IDRC procedures first appeared in a booklet entitled "Intoxicated Driver Resource Center Procedures Manual," dated October 1984. This manual was replaced by the Division of Alcoholism with a booklet entitled "Intoxicated Driver Resource Center Policies (1987)." The rules contained in these booklets not only have never been published in the *New Jersey Register* or the *New Jersey Administrative Code* but have been treated as confidential.

The 1987 booklet contains an "Introduction" which provides in part:

> This policy manual has been prepared to assist you in the daily operation of the IDRC.
>
> . . . .
>
> Since this manual contains confidential information regarding treatment referral criteria, it should not be released in whole or in part without written permission of the New Jersey Division of Alcoholism.

The booklet consists of 41 pages and sets forth extensive administrative rules which, among other things, cover the scheduling of "clients," evaluations, criteria and procedures for referrals, treatment programs, second opinions, appeals and non-compliance procedures. The booklet was not made available to Klemmer. A copy marked "confidential" was obtained for the purpose of this litigation through the prosecutor.

(1) *The I.D.R.C. Procedures.*

Convicted DWI offenders are given two notices setting forth the consequences of their conviction. One, signed by Klemmer in this case, contains I.D.R.C. information. It states:

> Defendant must satisfy screening, evaluation, educational or treatment referral, and program requirements of the Bureau of Alcohol Countermeasures and Intoxicated Driver Resource Center. Defendant's failure to attend the I.D.R.C. when notified or failure to satisfy any of the above requirements shall result in license suspension until such requirements are met and 2 days imprisonment in county jail.

Klemmer also signed a certification at the bottom of the same form which said:

> I understand the consequences of failure to meet the requirements of the above-referenced program. I further certify the above-described Defendant information is correct and acknowledge receipt of a copy of and understand this ORDER.

After conviction, Klemmer reported to an IDRC which operated under the rules and procedures set forth in the 1987 booklet or "policy manual." Particular rules or policies are illuminating:

> Policy # 9 deals with referrals. No outpatient or inpatient referral is to be made unless the client falls within one or more listed categories. These categories include "poor driving record", "prior self-help group attendance" and "outside information" which may consist of "anonymous tips". They are not well defined and, except for "outside information" may have no alcohol connection.
>
> Policy # 21 authorizes a "second·opinion", "if a client requests" one. Witnesses testified that clients are not advised of their right to have a second opinion. The opinion is only "allowable at the discretion of the IDRC." No instructions are provided for the exercise of that discretion. The second opinion is obtainable only at the client's expense.
>
> Policy # 22 relates to appeals. A client may have "the outcome" of a second opinion reviewed by a Division of Alcoholism District Supervisor but (apparently) only if a conflict arises between the "IDRC and the client".
>
> Policy # 24 deals with non-compliance. Failure to pay an IDRC fee results in the immediate mailing of a warning letter. In the event no reply is received within 10 days, a non-compliance report is sent to the "offender" and the "court". If the matter is not resolved in 30 days, a copy of the report is sent to the Bureau of Alcohol Countermeasures ("BAC") which "will issue a suspension order immediately." (*N.J.A.C.* 13:20–31.5 restricts the BAC to "recommend" a suspension to the Division of Motor Vehicles.) No directions are given as to the kind of mail to be used and no provision is made for notice to the offender of a proposed suspension request. The only forms of notice sent to the offender is the noncompliance report which does not refer to a license suspension.

IDRCs are expensive. *N.J.S.A.* 39:4–50(b) requires a convicted DWI defendant to pay a fee of $80 "to the Alcohol Education, Rehabilitation and Enforcement Fund . . . to support the Intoxicated Driving Program's Unit." A first offender attending an IDRC is assessed a *per diem* fee of $50, a second offender, $75. In an outpatient case, like Klemmer's, it is usual to require 16 once-a-week group experiences at a cost of $35 a session, or a total of $560. (Klemmer was told to participate in

15 sessions plus AA meetings.) Second opinions are obtainable at the offender's expense. Restoration of a suspended license involves a $30 charge.

(2) *The Administrative Procedure Act.*

The Administrative Procedure Act, *N.J.S.A.* 52:14B–1 *et seq.*, provides for the adoption of rules by state agencies. A "state agency" is defined in *N.J.S.A.* 52:14B–2(a) as:

Each of the principle departments in the executive branch of the State Government, and all boards, divisions, commissions, agencies, departments, councils, authorities, offices or officers within any such departments now existing or hereafter established and authorized by statute to make, adopt or promulgate rules or adjudicate contested cases, except the office of Governor.

The Department of Health and its divisions, agencies and departments are therefore subject to the act.

*N.J.S.A.* 52:14B–4(d) provides:

No rule hereafter adopted is valid unless adopted in substantial compliance with this act.

A "rule" is defined in *N.J.S.A.* 52:14B–2(e) to mean "each agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency." The rules contained in the IDRC policy manual clearly fall within this definition and were required to comply with the Administrative Procedure Act, as *N.J.S.A.* 39:4–50, the statute creating the IDRCs, expressly provides.

This conclusion is reinforced by the Appellate Division's opinion in *Bd. of Ed. of City of Plainfield v. Cooperman*, 209 *N.J.Super.* 174 (1986), aff'd but mvd. 105 *N.J.* 587 (1987), in which the court said:

Where the subject matter of an agency determination concerns matters that transcend those of individual litigants and involves matters of general administrative policy, rule making procedures should be invoked. [209 *N.J.Super.* at 204.]

See *Metromedia, Inc. v. Director, Div. of Taxation*, 97 *N.J.* 313, 331 (1984), in which the Supreme Court set forth an analysis of rule making requirements.

*N.J.S.A.* 52:14B–4 provides for advance notice of the proposed adoption of rules and for filing with the Senate and the General Assembly. Public notice must be published in the *New Jersey Register.* Interested persons are to be given an opportunity to submit "data, views, or arguments, orally or in writing." Hearings are required under certain circumstances. No notice of the proposed adoption of the rules contained in the IDRC policy manual was ever published.

*N.J.S.A.* 52:14B–7 requires publication of the *New Jersey Register,* a monthly bulletin, which is to set forth "(1) the text of all rules filed during the preceding month, and (2) such notices as shall have been submitted pursuant to this Act." Under certain circumstances, not applicable here, a publication of the rule may be omitted from the register, but an abbreviated notice is still required. The Director of the Office of Administrative Law is obliged to "compile, index, and publish a publication to be known as the 'New Jersey Administrative Code' containing all effective rules adopted by each Agency." The IDRC rules do not appear in the *New Jersey Administrative Code.*

Not only does *N.J.S.A.* 52:14B–4(d) deny the validity of any rule which has not been adopted in substantial compliance with the Administrative Procedure Act, but *N.J.S.A.* 52:14B–5(b) also provides that no rule "shall be effective unless it has been deemed to be approved by the Legislature...."

*N.J.S.A.* 52:14B–4(d) states:

A proceeding to contest any rule on the ground of noncompliance with the procedural requirements of this Act shall be commenced within 1 year from the effective date of the rule.

This limitation is not applicable when notice of the proposed adoption of a rule has not been given and the rule has never been published. See *National Assn. of Metal Finishers v. Environmental Protection Agency,* 719 *F.*2d 624, 638 (3 Cir. 1983), cited in *Bergen Pines Hosp. v. Dept. of Human Serv.,* 96 *N.J.* 456, 475 (1984) (failure to comment after adequate notice and opportunity to comment). The limiting language of the

statute refers to "any rule" and to "the effective date of the rule." It is intended, obviously, to restrict challenges to rules that are "on the books" but adopted without adherence to a technical procedural requirement. In the present case, the State not only ignored the requirements of the Administrative Procedure Act, with which it was obliged to comply by the express provisions of *N.J.S.A.* 39:4-50, it adopted rules which were secret.

When an agency has failed to comply with the rule-making requirements of the Administrative Procedure Act, its rules must be set aside. *Bd. of Ed. of City of Plainfield, supra,* 209 *N.J.Super.* at 207-210.

■ Klemmer's challenge in this appeal is two pronged: he claims that (1) he was not guilty of noncompliance, and (2) the original sentence of the municipal court requiring him to partic- ipate in IDRC procedures was illegal. Both claims must be sustained. Since no effective IDRC rules were in place at the time of his conviction, he cannot be convicted of failure to abide by them and the sentence subjecting him to them violated due process. In *Town Tobacconist v. Kimmelman,* 94 *N.J.* 85 (1983), our Supreme Court held:

> A law is void as a matter of due process if it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Const. Co.,* 269 *U.S.* 385, 391 [46 *S.Ct.* 126, 127, 70 *L.Ed.* 322] (1926). [94 *N.J.* at 118]

Here, the IDRC rules were, and are, nonexistent legally and in fact unavailable to those persons required to abide by them. They are therefore more offensive to constitutions than enact- ments which are only vague.

D. *The Constitutional Claims.*

Klemmer argues that the statute, *N.J.S.A.* 39:4-50, insofar as it relates to IDRCs, is unconstitutional. The argument rests on the contention that the statute delegates IDRC authority to a state agency without sufficient standards and safeguards. In addition, he claims that the IDRC rules themselves, regardless

of publication, deny due process because they not only lack required standards but are too vague to meet the constitutional demands.

These are substantial arguments. Courts, however, are to decide constitutional questions only when the decisions are necessary for the disposition of litigation. When a case can be disposed of on other grounds, constitutional questions should not be addressed. *Ahto v. Weaver*, 39 *N.J.* 418 (1963). This rule has been repeated in case upon case. Many are collected in 4 *N.J. Digest, Constitutional Law*, § 46. Klemmer's case has been disposed of on the basis of the publication—due process issue. No other constitutional claims need be considered.

## Conclusion.

Klemmer's original sentence, insofar as it refers to IDRC requirements, is set aside. He is not guilty of any failure to comply with IDRC rules.