NEW JERSEY CIVIL SERVICE ASSOCIATION, NEW JERSEY STATE EMPLOYEES ASSOCIATION, HOWARD POLLAK, MAE TUBISZEWSKI, MARIE MARSEN, PHOEBE KRUPNICK, AUDREY MAGEE, SYLVIA SCHULTZ, AND JACOB SUMRACHSON, APPELLANTS, v. STATE OF NEW JERSEY AND JOHN DEGNAN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, RESPONDENTS.

Argued January 12, 1982—Decided April 7, 1982.

---

606

608

*Richard H. Greenstein* argued the cause for appellants (*Fox and Fox*, attorneys).

*Andrea M. Silkowitz*, Deputy Attorney General, argued the cause for respondents (*James R. Zazzali,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

SCHREIBER, J.

At issue in this case is whether state employees who formerly functioned as hearing officers in the Division of Motor Vehicles are entitled to appointment as administrative law judges under the act creating the Office of Administrative Law, *N.J.S.A.* 52:14F–1 *et seq.* Appellants are certain individuals, who before the implementation of *N.J.S.A.* 52:14F–1 *et seq.* were hearing officers in the Division of Motor Vehicles, and the New Jersey Civil Service Association and the New Jersey State Employees Association who brought this action on behalf of their respective members.

Prior to 1978 many contested cases before state agencies were initially heard by a hearing officer or an examiner who was an employee of the agency responsible for rendering a decision. Some hearing officers were part-time employees who were paid on a per diem basis; others were full-time state employees who performed other duties for their agencies in addition to holding hearings.[1] The use of agency employees to adjudicate claims

---

[1]There were approximately 150 such full and part-time hearing officers throughout the State; about 70 held classified positions.

against an agency encouraged an institutional bias that undermined the fairness and impartiality desired in administrative adjudication. *Mazza v. Cavicchia*, 15 *N.J.* 498, 536 (1954) (Jacobs, J., dissenting).

To rectify this condition the Legislature amended the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 *et seq.*, in 1978 to create an independent Office of Administrative Law, staffed by a corps of independent examiners known as administrative law judges. *N.J.S.A.* 52:14F–3, 4, 5. The major purpose of this legislation was "to bring impartiality and objectivity to agency hearings and ultimately to achieve higher levels of fairness in administrative adjudications." *Unemployed-Employed Council of New Jersey, Inc. v. Horn*, 85 *N.J.* 646, 650 (1981). Except for the State Board of Parole, the Public Employment Relations Commission, the Division of Workers' Compensation, and the Department of Defense,[2] state agencies can no longer use their own employees to preside over contested cases. *N.J.S.A.* 52:14F–8. Instead, that function is performed by administrative law judges, who are directly responsible to the Director of the Office of Administrative Law. *N.J.S.A.* 52:14F–5.

It is the duty of the Director to "[a]ssign an administrative law judge to any agency empowered to conduct contested cases to preside over . . . proceedings in contested cases . . . ." *N.J. S.A.* 52:14F–5 n. The Director may also assign an administrative law judge to any agency to conduct or assist in rule-making and investigative hearings, if requested to do so by the head of an agency. *N.J.S.A.* 52:14F–5 o. Administrative law judges are appointed by the Governor with the consent of the Senate for five-year terms. They must be either attorneys-at-law of New Jersey or, in the judgment of the Governor or the Director, "qualified in the field of administrative law, administrative hearings and proceedings in subject matter relating to the

---

[2]Also excluded are agencies whose primary responsibility involves management or operation of a state educational, medical, mental, rehabilitative, custodial, penal or correctional institution or program. *N.J.S.A.* 52:14B–2 a.

hearing functions of a particular state agency." *N.J.S.A.* 52:14F–4, 5 *l.*

The Act provides that it is subject to the provisions of the State Agency Transfer Act. See *N.J.S.A.* 52:14F–9, referring to *N.J.S.A.* 52:14D–1 *et seq.* Under the terms of the State Agency Transfer Act, whenever the functions, powers and duties of one agency of the state government are transferred to another, the employees of the agency are transferred as well. *N.J.S.A.* 52:14D–5. In view of the explicit reference to the State Agency Transfer Act, the Director of the Office of Administrative Law inquired of the Attorney General whether the then-employed hearing officers were entitled to appointment as administrative law judges. In an opinion of March 1, 1979, the Attorney General expressed the view that "the functions and responsibilities of Hearing Officers-Examiners in the respective state agencies, insofar as they pertain to presiding over contested cases as are required by the Administrative Procedure Act, have now been abolished and placed exclusively by the Legislature in the Office of Administrative Law." *Attorney General's Formal Opinion No. 4* (1979). He found that the State Agency Transfer Act did not apply to hearing officers in the several state agencies. The Attorney General further advised that the Chief Examiner and Secretary of the Civil Service Commission should conduct an investigation in accordance with civil service laws and regulations to determine the tenure, seniority and other employment rights of those serving as hearing officers.

Although the Director of the Office of Administrative Law did not announce that he had followed the Attorney General's advice, or adopted his opinion, hearing officers were not automatically transferred to the Office of Administrative Law. Rather, they were invited to apply for appointment as administrative law judges. Of the forty-five individuals now acting as administrative law judges, approximately half were formerly hearing officers. None of the individual appellants has been appointed an administrative law judge. After the creation of the Office of Administrative Law they were tentatively reclassi-

fied under the title "Service Improvement Specialist II" and as such no longer preside over contested hearings in the Department of Motor Vehicles.

After issuance of the Attorney General's opinion, appellants filed a complaint in lieu of prerogative writ and for a declaratory judgment in the Law Division, and also filed a notice of appeal from the Attorney General's opinion to the Appellate Division. The gist of their complaint in both proceedings was that persons holding the title of Hearing Officer/Examiner in the various state agencies were entitled under the provisions of *N.J.S.A.* 52:14F–9 to appointment as administrative law judges.

Neither the Law Division nor the Appellate Division considered the merits of appellants' claim. The action in the Law Division was dismissed for lack of jurisdiction and no appeal was taken from that judgment. The Appellate Division dismissed the appeal because it was not from a "final decision or action" of a state agency, *R.* 2:2–3(a)(2), but a legal opinion of the Attorney General. We granted certification from that dismissal, 87 *N.J.* 413 (1981), and, despite certain procedural irregularities, now resolve the case on its merits.

I

This Court has appropriately refrained from rendering advisory opinions and from functioning in the abstract. *Crescent Pk. Tenants Assoc. v. Realty Eq. Corp. of N. Y.,* 58 *N.J.* 98, 107–08 (1971); *The Proprietary Association v. Board of Pharmacy of New Jersey,* 16 *N.J.* 62, 72 (1954); *New Jersey Turnpike Authority v. Parsons,* 3 *N.J.* 235, 240 (1949). Consequently we have declined to review mere "opinions" or "conclusions" of administrative officers on which no official action was based. *Vesey v. Driscoll,* 132 *N.J.L.* 293 (Sup.Ct.1944) (no review of conclusions of ABC Commissioner that were not part of order); *Morgan v. Burnett,* 121 *N.J.L.* 352 (Sup.Ct.1938) (no review of opinion of ABC Commissioner that did not constitute administrative act).

■ Certainly the Attorney General's Opinion expressing the view that hearing officers are not entitled to appointment as administrative law judges was not a final agency action subject to review. However, the Director of the Office of Administrative Law has followed the Attorney General's advice and has not appointed any of the individual appellants as administrative law judges. The appellants' action may thus fairly be considered an appeal from the implicit refusal of the Director to appoint them as administrative law judges. See *Advance Development Corp. v. Mayor and Alderman of Jersey City*, 6 *N.J.Misc.* 238, 240 (Sup.Ct.1928) (refusal to act "is tantamount to a denial"), app. dism., 105 *N.J.L.* 234 (E. & A. 1928).

Such a construction does not conflict with the Court's reluctance to render opinions in the abstract. Our principal aim in avoiding premature review of administrative determinations has been to protect the Court from becoming entangled in abstract disagreements over administrative policies, and also to refrain from judicial interference until an administrative decision has been formed and its effects felt in a concrete way by the challenging parties. In this case, although administrative policy has not been formally expressed, three years have passed since the Director of the Office of Administrative Law received the Attorney General's opinion. The Director's failure to appoint any of the individual appellants as an administrative law judge is tantamount to final agency action. The effect of that action is directly felt by appellants. In considering their claim we do not intrude into agency policymaking.

Similar considerations prompt us to excuse the failure to exhaust available administrative remedies. Rather than pursue their rights as classified civil service employees to present their claim to the Civil Service Commission, the individual appellants went directly to the Appellate Division in apparent violation of *R.* 2:2–3(a). The rule provides that "[u]nless the interest of justice requires otherwise, review ... shall not be maintainable so long as there is available a right of review before any administrative agency or office."

■ The exhaustion of administrative remedies is not an absolute prerequisite to seeking appellate review, however. Exceptions are made when the administrative remedies would be futile, when irreparable harm would result, when jurisdiction of the agency is doubtful, or when an overriding public interest calls for a prompt judicial decision. *Garrow v. Elizabeth General Hospital and Dispensary*, 79 *N.J.* 549, 561 (1979). We have frequently held that in a case involving only legal questions, the doctrine of exhaustion of administrative remedies does not apply. *Farmingdale Realty Co. v. Borough of Farmingdale*, 55 *N.J.* 103, 112 (1969); *Matawan Borough v. Monmouth County Tax Board*, 51 *N.J.* 291, 296 (1968). As Justice Jacobs has explained, in determining when the exhaustion requirement may be waived,

we are not particularly concerned with the label or description placed on the issue but are concerned with underlying considerations such as the relative delay and expense, the necessity for taking evidence and making factual determinations thereon, the nature of the agency and the extent of judgment, discretion and expertise involved, and such other pertinent factors ... as may fairly serve to aid in determining whether, on balance, the interests of justice dictate the extraordinary course of bypassing the administrative remedies made available by the Legislature. [*Roadway Express, Inc. v. Kingsley*, 37 *N.J.* 136, 141 (1962)]

■ In this case, there are no facts in dispute. We need consider only the law and legislative history. Nor does resolution of the disputed issue call for the exercise of special administrative expertise. In these circumstances, putting appellants to the additional expense and delay of bringing their case in the appropriate administrative forum is unjustified.

■ There is one further procedural point to be considered before reaching the merits of this case. Appellants' action is procedurally defective for failure to join necessary parties. Although the appellants complain that the Director of the Office of Administrative Law failed to secure appointment of appellants as administrative law judges, neither the Director nor the Office of Administrative Law is named as a party. Perhaps adhering to the theory that appeal was taken from the opinion of the Attorney General, appellants proceeded only against the

State of New Jersey and the Attorney General. Since, as we have explained, it is the inaction of the Director rather than the Attorney General's opinion that is under review, the Director of the Office of Administrative Law should have been made a party to this suit. Inasmuch as the Attorney General has actively participated in the litigation and would have formally represented the Director, we will consider the matter as if there had been a proper joinder.

## II

In support of their contention that former hearing officers are entitled to appointment as administrative law judges, appellants rely on the provision of the Act establishing the Office of Administrative Law that provides that that Act shall be subject to the State Agency Transfer Act, *N.J.S.A.* 52:14D–1 *et seq.* The State Agency Transfer Act is best described by its title:

> An act concerning the organization and reorganization of the State Government, relating to the transfer of functions, powers and duties from one agency to another by law . . . .

It applies "[w]henever by law an agency of the State Government is transferred . . . unless otherwise provided by the act effecting such transfer." *N.J.S.A.* 52:14D–3. The statute proceeds in separate subsequent sections to provide for the transfer of appropriations, grants and other money, *N.J.S.A.* 52:14D–4, the transfer of files, records, equipment and other property, *N.J.S.A.* 52:14D–8, and the transfer of employees, *N.J.S.A.* 52:14D–5. Thus the Act applies when one agency, including any department, division or the like is placed in another agency. That is not this case where former hearing officers were scattered throughout many different administrative bodies, none of which was transferred to the Office of Administrative Law.[3]

---

[3]The hearing officers as a group do not constitute a separate agency or subdivision of an agency which has been transferred.

■ When read in conjunction with the Office of Administrative Law act, it becomes clear that the reference to the State Agency Transfer Act concerned the predecessor of the Office of Administrative Law, the Division of Administrative Procedure, whose functions and employees were transferred to the Office of Administrative Law. The Office of Administrative Law act specifically provides that

> [a]ll the functions, powers and duties heretofore exercised by the Division of Administrative Procedure in the Department of State pursuant to the Administrative Procedure Act, ... are transferred to and vested in the Office of Administrative Law .... [*N.J.S.A.* 52:14F–2]

In order to effect this transfer from one agency to another, and to provide protection to the employees of the Division of Administrative Procedure, the statute creating the new agency invoked the provisions of the State Agency Transfer Act.

Appellants' reliance on the statement of the Senate State Government, Federal and Interstate Relations and Veterans Affairs Committee to reach a contrary result is misplaced.[4] In referring to the applicability of the State Agency Transfer Act, the Committee statement read in part that the Act would " 'grandfather in' present employees of agencies whose functions are being transferred to the new office. This 'grandfathering' would be inclusive of those employees presently serving as hearing officers." Appellants contend that the statement unequivocally establishes that the Legislature intended that hearing officers in the various government agencies and departments should become administrative law judges.

■ Although statements of legislative committees may serve as aids in construing ambiguous or conflicting terms of a statute, they cannot clothe it with a meaning not fairly within its words and purposes. "Such aids are only admissible to solve doubt, and not to create it." *Railroad Commission of Wisconsin v. Chicago, Burlington and Quincy Railroad Co.*, 257 *U.S.* 563,

---

[4]The statement was appended to the bill, Senate No. 766, which created the Office of Administrative Law.

589, 42 *S.Ct.* 232, 237, 66 *L.Ed.* 371, 383 (1921). In the determination of the intended effect of a statute "its internal sense should control the meaning to be ascribed to its literal terms; the statutory language must be read perceptively and sensibly with a view toward fulfilling the legislative intent." *Unemployed-Employed Council of New Jersey, Inc. v. Horn, supra,* 85 *N.J.* at 655.

An analysis of the plain terms of the Office of Administrative Law act reveals a legislative intent inconsistent with appellants' interpretation. For example, the qualification and appointment requirements for administrative law judges make it clear that the Legislature did not intend to transfer existing hearing officer positions to the Office of Administrative Law. The administrative law judges must either be attorneys-at-law or possess particular expertise, *N.J.S.A.* 52:14F–5 *l,* m. They are to be appointed by the Governor for five-year terms, *N.J.S.A.* 52:14F–4, with the advice and consent of the Senate, *N.J.S.A.* 52:14F–3. The Director may appoint temporary administrative law judges having the "same qualifications." *N.J.S.A.* 52:14F–5 m. The former hearing officers in the Division of Motor Vehicles and other agencies were not selected in accordance with the mandatory criteria of these provisions. Compulsory transfer of hearing officers from the several agencies into the new Office of Administrative Law would negate the statutory qualification and appointment provisions.

Further, the administrative law judges are not confined to the same functions as the former hearing officers; their potential duties exceed simply presiding over contested cases. They may be assigned to conduct rulemaking and investigative hearings. *N.J.S.A.* 52:14F–5 *o.* A judge not engaged in hearing contested cases may be requested to perform other duties vested in the Office of Administrative Law. *N.J.S.A.* 52:14F–5 p. Even as to the conduct of contested cases, administrative law judges fulfill an expanded function. The recommended decision of an administrative law judge is required to be in such form that it may be

adopted as the decision of the case. If not adopted, modified or rejected within forty-five days, the decision becomes the final decision of the head of the agency. *N.J.S.A.* 52:14B–10 c.

The abovementioned elements of the statutory scheme indicate that the Legislature intended to create a corps of independent professionals, who were not simply hearing officers under a different title, but had greatly expanded duties. There is nothing in the Office of Administrative Law act that suggests that former hearing officers were to be imported en masse into the new office. This is not to say that no former hearing officer may be made an administrative judge. Some have been. However, the Act vests the power of appointment in the Governor, *N.J.S.A.* 52:14F–4. It is within the Governor's prerogative to determine initially whether a former hearing officer is to become an administrative law judge.

If the Legislature had intended a general transfer of all hearing officers, it could have stated its intention in unmistakable terms. It did not do so. Instead it provided for a full-time corps of trained, skilled administrative law judges. These judges were intended to expedite the process by which state administrative agencies and departments decide contested cases and to inject greater impartiality into that process. We conclude that the Office of Administrative Law act provides no authority to transfer the existing positions as hearing officers in the various state agencies and departments to the Office of Administrative Law.

Accordingly, the judgment of the Appellate Division is affirmed for the reasons stated.

*For affirmance*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER and HANDLER—5.

*For reversal*—None.