921 A.2d 1159 (2007)
392 N.J. Super. 577
In re DETERMINATION BY DIRECTOR OF the DIVISION OF ALCOHOLIC BEVERAGE CONTROL THAT the XANADU REDEVELOPMENT PROJECT at the Continental Airlines Arena Site at the Meadowlands Sports Complex MEETS ALL JURISDICTIONAL REQUIREMENTS for the Issuance of Any Necessary Special Concessionaire Permits Pursuant to N.J.A.C. 13:2-5.2.
In re Advisory Opinion by the Office of the Attorney General, Department of Law and Public Safety.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 2007.
Decided May 8, 2007.
*1160 Paul F. Carvelli, Chatham, argued the cause for appellants New Jersey Restaurant Association and East Rutherford Restaurant (McCusker Anselmi Rosen Carvelli & Walsh, attorneys, Chatham; Arthur D. Grossman, West Orange, Robert J. Rohrberger, Roseland, and Anthony DiSalvo, Wayne, on the brief).
D. Mark Leonard, argued the cause for appellants Hartz Restaurant Associates (Horowitz, Rubino & Patton, attorneys; *1161 Irwin A. Horowitz and Allen J. Magrini, of counsel; Mr. Leonard, on the brief).
Lisa Hibner Tavani, Deputy Attorney General, argued the cause for respondent Division of Alcoholic Beverage Control (Stuart Rabner, Attorney General, attorney; Lorinda Lasus, Deputy Attorney General, of counsel; Ms. Tavani, on the brief).
Timothy J. O'Neill, Princeton, argued the cause for respondent New Jersey Sports & Exposition Authority (Windels Marx Lane & Mittendorf, attorneys; Mr. O'Neill, of counsel; Charles M. Fisher and Sandy L. Galacio, Jr., on the brief).
Michael R. Cole, Teaneck, argued the cause for respondents The Mills Corporation and Mack-Cali Realty Corp. (DeCotiis, Fitzpatrick, Cole & Wisler, attorneys; Mr. Cole and William Harla, of counsel; Benjamin Clarke and Thomas A. Abbate, on the brief).
Before Judges KESTIN, GRAVES and LIHOTZ.
The opinion of the court was delivered by
KESTIN, P.J.A.D.
On June 23, 2005, the Director of the Division of Alcoholic Beverage Control (ABC or the Division) issued an "advisory opinion" at the request of the Meadowlands Mills/Mack-Cali Limited Partnership (requestor), described as "the master developer" of a tract "within the Meadowlands Sports Complex pursuant to a redevelopment agreement with the New Jersey Sports and Exposition Authority" (NJSEA) engaged in a project referred to as "Meadowlands Xanadu". The requestor sought to determine "the availability of special concessionaire permits allowing the service of alcoholic beverages, as provided for in N.J.A.C. 13:2-5.2, in the context of this project."
If the Director determined that such permits were available, he and the ABC would be the licensing authority pursuant to the regulation and N.J.S.A. 33:1-42, see also N.J.S.A. 33:1-39, -74, rather than the local licensing authorities under the terms and limitations ordinarily applicable. The Director concluded that special concessionaire permits were available. The New Jersey Restaurant Association and East Rutherford Restaurant Appellants filed one appeal; Hartz Restaurant Associates appealed separately. In a consent order, we consolidated the appeals.
An advisory opinion is a nonbinding statement by a court or an administrator interpreting the law on a matter submitted for that purpose. See Black's Law Dictionary 1119 (7th ed. 1999). The issuance of advisory opinions by federal courts has always been prohibited because such matters do not meet the "case or controversy" requirements contained in U.S. Const. art. III, § 2, cl. 1. See Muskrat v. U.S., 219 U.S. 346, 356-57, 31 S.Ct. 250, 254, 55 L.Ed. 246, 250 (1911); Hayburn's Case, 2 U.S. 409, 410, 1 L.Ed. 436 (1792). See also Massachusetts v. Environmental Protection Agency, ___ U.S. ___, ___, 127 S.Ct. 1438, 1452, 167 L.Ed.2d 248, 267 (2007). Notwithstanding the absence of a case or controversy standard in the State Constitution, courts in New Jersey do "not render advisory opinions or function in the abstract." Crescent Pk. Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 107, 275 A.2d 433 (1971).
[W]e have appropriately confined litigation to those situations where the litigant's concern with the subject matter evidenced a sufficient stake and real adverseness. In the overall we have given due weight to the interests of individual justice, along with the public interest, always bearing in mind that throughout our law we have been sweepingly rejecting procedural frustrations in favor of *1162 "just and expeditious determinations on the ultimate merits."
[Id. at 107-08, 275 A.2d 433 (quoting Tumarkin v. Friedman, 17 N.J.Super. 20, 21, 85 A.2d 304 (App.Div.1951), certif. denied, 9 N.J. 287, 88 A.2d 39 (1952)).]
As a consequence of these policies, State courts are enjoined to "decline[] to review mere `opinions' or `conclusions' of administrative officers on which no official action was based." New Jersey Civil Service Ass'n v. State of New Jersey, 88 N.J. 605, 611, 443 A.2d 1070 (1982). Clearly, judicial review of an administrative agency's advisory opinion is, in itself, an advisory opinion. See id. at 612, 443 A.2d 1070. The prohibition against review of advisory opinions is not absolute, however. It may be overcome where an administrative determination "is tantamount to final agency action[,]" i.e., resulting in "action . . . directly felt by appellants." Ibid. Nevertheless, "[i]n considering [such a] claim we [must] not intrude into agency policymaking." Ibid.
In his opinion, the Director reviewed his agency's developing "authority to issue licenses and permits in circumstances that are warranted by the public interest[,]" especially where activities subject to licensure were conducted on public property, "without distinction as to municipality or reference to license limitation." See N.J.S.A. 33:1-42. He also analyzed the relationship between the requestor and the NJSEA, in the light of the growing governmental involvement in economic development, observing that
these projects are best addressed by an agency, such as the ABC, having the expertise and the state-wide jurisdiction to fully address the State economic and policy considerations involved in permitting alcohol service at such venues. Utilization of a specific permit, such as a special concessionaire permit, was determined by the ABC nearly 30 years ago to be the appropriate method to regulate the sale of alcohol on property owned or controlled by a governmental entity.
The Director viewed the fundamental criterion for the assertion of special concessionaire jurisdictional authority to be "governmental involvement, in either an ownership or a control capacity."
NJSEA's status "as an instrumentality of the State exercising public and essential governmental functions" is established by statute, N.J.S.A. 5:10-4a, and, according to the Director, "the Division has issued a number of special concessionaire permits to operators of premises owned or controlled by NJSEA. . . ." The Director viewed the requestor's ground lease for a seventy-five-year term as "unquestionably" leading to the conclusion that "NJSEA retains ownership of the land[,]" and that its "ownership of the project land is sufficient to evidence the basis for the issuance of special concessionaire permits[,] . . . regardless of its direct relationship with the special concessionaire permittees. . . . [T]here is no dispute that Xanadu is part of a governmentally sponsored redevelopment project found to be in the public interest."
The Director went on to note that "the public interest is further reflected by a continuing involvement in this project by NJSEA for the public benefit and protection with respect to alcohol sales by tenants of the Xanadu project." He noted that NJSEA had retained authority to designate which premises in the project would be permitted to sell alcohol subject, of course, to the Director's licensing authority. He concluded by noting that East Rutherford, the municipality in which the project was located had only nineteen retail consumption licenses issued "and due to the population cap, cannot issue any new licenses. Even if all of these licenses were acquired from the current owners, *1163 they would be inadequate for a project of this magnitude," and that such an eventuality "would be contrary to the public interest" in allowing the requirements of the project to trump local needs for liquor licenses.
In making the jurisdictional determination reflected in the advisory opinion, i.e., that he would entertain applications for special concessionaire permits, the director took no action against appellants that was substantively adverse to them. It is a matter of some significance, as well, that the issue was decided in the absence of a hearing. To the extent appellants have standing to develop and present arguments regarding the validity and appropriateness of the jurisdictional exercise, the accuracy and sufficiency of any of the grounds on which the exercise is to be based, and the impact of the exercise on their legal rights, they cannot be denied a fitting opportunity to do so on the administrative agency level. That right is recognized in the regulation itself governing the application process for special concessionaire permits, which establishes that any objectors must be afforded the opportunity for a hearing. See N.J.A.C. 13:2-5.2(f). On its face, that regulation contains no special standing criteria that an objector must meet. It presupposes that a hearing will be held if "a duly signed written objection to the issuance of a special concessionaire permit" is received by the Director. Precluding any objector with real standing from challenging the exercise of special-concessionaire-permit jurisdiction, or from raising any other grounds pertinent to such an application, would deny it a basic opportunity to protect its property interests.
As is typically the case, and a reason why judicial advisory opinions are disfavored in this State, the record before us lacks essential matter. Appellants have provided four thick volumes of documents totaling 1399 pages, but there has been no evaluation by the Director  applying his expertise and public policy perceptions, see, e.g., Heir v. Degnan, 82 N.J. 109, 122, 411 A.2d 194 (1980)  of the issues and arguments appellants have advanced and the evidence submitted in support of those arguments. Obviously, without a hearing preceding the issuance of the advisory opinion, no such development could occur.
We find no fault with the Director's assertion of subject matter jurisdiction as a way of beginning the evaluative process, but the underlying issues may not proceed to final resolution on the administrative level before the objections raised by appellants receive an appropriate hearing. That opportunity is assured by N.J.A.C. 13:2-5.2. To be certain these appellants' rights are exercised in a timely and sufficient manner, they should receive specific notice of the applications from the Director, in addition to the notice by publication provided in subsections (c), (d), and (e) of the regulation.
The appeal is dismissed.