**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2059-13T3
                    A-4589-14T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

    Petitioner-Respondent,

v.

P.S. and C.L.,

    Respondents-Appellants.

_____

Submitted January 18, 2017 — Decided  July 19, 2017

Before Judges Espinosa, Suter and Guadagno.

On appeal from the New Jersey Department of
Children and Families, Division of Child
Protection and Permanency.

P.S. and C.L., appellants pro se.

Christopher S. Porrino, Attorney General,
attorney for respondent (Andrea M. Silkowitz,
Assistant Attorney General, of counsel; Lori
J. Decarlo, Deputy Attorney General, on the
briefs).

PER CURIAM

Defendants P.S. (Patricia) and her husband, C.L. (Chad), appeal from two decisions made by the Division of Child Protection and Permanency (the Division) regarding A.P. (Adam) and D.P. (David), Patricia's two sons with her former husband, J.P. (John). The first decision, appealed under Docket No. A-2059-13, announced in letters to defendants dated December 19, 2013 and March 14, 2014, was that child abuse allegations made against them in September 2013 were "not established." The second decision challenged, appealed under Docket No. A-4589-14, was made on May 6, 2015, when the Division decided not to provide services to the family following the completion of a child welfare check. We scheduled the two appeals back-to-back and now decide both in this opinion.

## I.

Adam and David live with Patricia, Chad, and Chad's two sons, C.L. (Cory) and B.L. (Brian)[1]; they visit with John during the week and every other weekend. The referral to the Division was made in September 2013, shortly after defendants were married and returned from a family vacation in the Catskills. It is evident from the records that the children's resistance to the change in

---

[1] At the time of the Division's investigation, Adam was thirteen; David was eight; Brian was seventeen and Cory was ten.

their lives was a factor in the allegations, although not a dispositive one in the Division's resolution of its investigation.

John contacted the Division,[2] and reported that his children told him Chad "slaps" them "on their faces and heads and he . . . put his knee on [Adam's] chest one day in the past." John admitted the children did not suffer any injuries and that he did not know what degree of force Chad used or how frequent the abuse was.

The Division interviewed David and Adam at their respective schools. Both boys described having good relationships with their mother but also stated she "sometimes" disciplines them by hitting them on their heads and arms but left no marks on them. Adam recalled that she last hit him or his brother about "two to three months ago."

Both boys also reported physical abuse by Chad. David reported that Chad hits him and Adam using "an open hand, on the side of their heads, near their ear[s]," and that it happened "often and sometimes [Chad] leaves a black and blue on the side

---

[2] On the day before he contacted the Division, John reported to the Glen Rock Police Department that Adam and David told him they had been verbally and physically abused by Chad and his sons while they were on vacation. Adam and David told the police "they have fear issues of being home with [Chad]." The police did not observe any physical signs of abuse on Adam and David. However, the police noted that it was "apparent that the children feel that [Chad] should have no authority in matters of discipline when it comes to them." Patricia denied any abuse by Chad.

of their head[s]." Adam reported that Chad hits him and David "on the arm, on top of the head and on the face" and that it happened "approximately four or five times a month," but "does not leave intentional[] marks," only "accidental[] scratches." David did not know why Chad hits him, but added that Chad "tries to teach him a lesson" and recalled that Chad "hits him and [Adam] when they laugh or 'for no reason.'" Adam stated that Chad hits him because "according to [Chad], he . . . was acting like a 'moron.'"

David stated he was last hit by Chad two days prior to the interview; Adam stated Chad last hit him a week before the interview. Both boys reported they were hit while on vacation. David stated that Chad "gently put him and his brother on the ground and put his . . . knees on their chest because he was upset that they . . . were laughing." Adam similarly recalled the incident, and stated that he asked Chad to stop but he refused. David stated that, in response, Patricia told him that Chad "'was not putting to [sic] much pressure' when he put his knees on their chest."

Both boys reported that sometimes Chad directed Brian to hit them. Adam stated that Chad tells Brian "to keep them . . . in line if they . . . act like morons," and that Brian sometimes hits them without such instruction but does not leave any marks on them. Adam said that, although Patricia does not always agree

4

with Chad hitting them, she frequently will say they "deserve it." David reported that his mother tells Brian to stop when she witnesses him hitting them.

While David confirmed he was afraid of Chad because he hits him, Adam denied being "really afraid of" Chad and Brian. Adam said they had a recent "family meeting" where Chad agreed to "work on not hitting him and his brother." Although David and Adam had some observable abrasions, they denied that any were caused by willful abuse by Chad or Brian.

The Division also conducted a meeting with Chad and Patricia at their home. Patricia acknowledged "there was a lot of horseplay" in the house and that Chad "has slapped the children in the past which she allows." Patricia also admitted to slapping the children herself, but denied causing any bruises. She explained she slaps them "in the face because she does not want to touch their private parts . . . because this would 'open her up to other allegations.'" After being counseled on alternative methods of discipline, Patricia did not seem to understand why it was inappropriate for Chad to physically discipline Adam and David. As an example, she believed her husband was justified in slapping her son after he kicked Chad in the testicles. The Division caseworker advised Patricia that the Division would be called numerous times if she continued to allow Chad to slap her children.

Chad characterized the instance of abuse on vacation as "roughhousing," but admitted to occasionally slapping the children. He was "very frustrated" when he was advised against hitting David and Adam. However, following her conversation with the caseworker, Patricia told Chad "he would no longer be hitting the children."

After performing a safety assessment of Patricia and Chad's home, the Division concluded the home was safe and intervention was not required.

A search of the Division's computer records yielded ten Division referrals involving Chad, some of which involved physical abuse.[3] The contact sheet also reproduced notes from a 2007 substantiation of neglect against Chad and his ex-wife stemming from an instance of domestic violence. After Chad appealed that determination, the Division modified the finding of neglect to "unfounded." As a result, the Division issued a Notice of Change of Child Abuse or Neglect Finding (Notice), dated December 1, 2010, that stated, in part: "Because the 'substantiated' finding has been changed [the Division] will not keep a record of the

---

[3] Defendants contend this report in the Division's case notes is false and that the Division used this false information in its investigation of the referral in this case despite the fact that the prior allegations were substantiated against his former wife and not him.

results of this investigation on its central registry of confirmed perpetrators of substantiated incidents of child abuse and neglect." The Notice further advised that "all child abuse records associated with this investigation" would be expunged after three years pursuant to N.J.S.A. 9:6-8.40(a) and N.J.A.C. 3A:10-8.1[4] unless certain events occurred within that time period. As of September 2013, when the instant referral was made, the 2007 referral records had not been expunged.

The Division conducted follow-up interviews with defendants, David, Adam, Brian and Cory in November 2013. David stated he knew the Division was interviewing him because Chad "hits him 'all the time,'" and recalled Chad last slapped him on the side of the head for spilling Gatorade on the couch. David stated "it hurt when he was hit and that he heard ringing in his ears." David again reported his mother occasionally slaps him and was aware of Chad's abuse, although he stated "she would not admit to it." He stated he was "'a little' afraid of [Chad]" and "wished [he] would stop slapping him and [stop] tell[ing] his mother when he had to go to bed." At one point, David claimed he was sleeping in the garage as a result of Chad's abuse, but then admitted it

---

[4] The regulations governing Child Protection Investigations were originally codified under N.J.A.C. 10:129, but as of January 3, 2017, they were recodified under N.J.A.C. 3A:10.49. N.J.R. 98(a) (Jan. 3, 2017). We refer to the current regulation throughout.

was a "joke." The Division caseworker warned him against lying, and David stated he understood.

Adam was reluctant to talk about Chad's alleged abuse and "minimized any physical discipline, stating that [Chad] really only slapped them on the shoulder when they were being really disrespectful." He stated Chad had not slapped him in two months, and denied that it hurt. Adam also denied any physical discipline by Patricia.

Cory admitted seeing Chad "slap [Adam] on the shoulder when he was making stupid noises" but denied seeing him hit David. Cory felt Chad "had anger issues" because he "yelled a lot and . . . was extremely strict." Seventeen-year-old Brian asserted, however, "there was absolutely no child abuse going on in his home." He admitted to wrestling and having pillow fights with his brother and step-brothers, but denied hurting them. He also denied that Chad ever directed him to discipline Adam or David.

Chad was described by the interviewer as "somewhat nervous . . . but cooperative." Patricia and Chad both admitted to slapping their children, but denied hurting them or leaving any marks. Chad stated that "slapping" meant "a slap on the shoulder, or the side of the head." After the Division caseworker explained to Patricia and Chad that physical discipline was ineffective and discouraged by experts, they were observed as "somewhat evasive

initially, stating that they could not understand why [Chad] should not be disciplining the children." The caseworker followed up by explaining to them the laws against corporal punishment and stressed that physical discipline, if any, should not be performed "by anyone other than a biological parent." Patricia and Chad were also advised that "aside from obvious harm, they were also giving substance to the referent's allegation of physical abuse." They "eventually agreed that neither one of them would physically discipline the other parent's children and that they would try to refrain from any physical punishment."

The Division also interviewed Patricia, Chad, and David as a group to address Chad's physical abuse of David, who "was firm in insisting that [Chad] . . . slapped him all the time." The Division caseworker observed that David "did not appear to be afraid of [Chad] during the meeting and often openly yelled at him," but did become "upset and eventually left the room crying." The case worker encouraged Patricia to seek individual and family therapy for David, as he was clearly very affected by the situation at home.

In a private meeting with Chad, the Division caseworker also addressed his prior involvement with the Division. He stated that Patricia was aware of his history and gave the caseworker permission to freely address the issue in front of her. The

caseworker reported that Chad was "very bitter," and complained about being treated unfairly in his previous matters with the Division.

After the follow-up interviews, the Division completed a Family Risk Assessment, noting there had "been more than one incident of domestic violence in the past 12 months (including the current referral)," and found the risk level for abuse was "Moderate." Further, the Division concluded the allegations made against Chad regarding the abuse of David and Adam were "Not Established." The Division's report closing the case in November 2013 included the following findings:

> There is not a preponderance of the evidence that the children were abused or neglected by definition, but evidence that the children were harmed or placed at risk of harm. The children as well as [Chad] and [Patricia] admitted that they use physical punishment as discipline for the kids. They were strongly advised against that and have agreed to utilize alternate forms of discipline.

The Division notified Patricia and John that it had determined the allegation that Adam and David were abused was "Not Established," and that a record of the incident would be maintained in the Division's files but would "not be disclosed except as permitted by N.J.S.A. 9:6-8.10a." The notification letters also included a definition of the "Not Established" finding:

An allegation shall be Not Established if there is <u>not</u> a preponderance of the evidence that a child is an abused or neglected child as defined in <u>N.J.S.A.</u> 9:6-8.21, but evidence indicates that the child was <u>harmed or was placed at risk of harm.</u>

## II.

Following the adoption of <u>N.J.A.C.</u> 3A:10-7.3 in April 2013, the finding of "not established" is one of four possible determinations the Division may make following its investigation of an allegation of abuse or neglect. In their appeal, defendants challenge the four-tier system established by that regulation, with particular criticism of the "not established" finding, arguing it vests too much discretion in the Division and does not afford them the right to an administrative appeal. They also attack the factual basis for that finding in this case and contend the record of the Division's investigation should be destroyed because it contains false and prejudicial information. We are not persuaded by these arguments.

<u>N.J.S.A.</u> 9:6-8.21(c) defines an abused or neglected child. Corporal punishment constitutes "abuse" under <u>N.J.S.A.</u> 9:6-8.21(c)(4)(b) if it is excessive. The statute provides, in part, that a child is "abused or neglected" when his or her

physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure

11

> of his [or her] parent or guardian . . . to exercise a minimum degree of care . . . by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment.
>
> [Ibid.]

To constitute abuse or neglect, the failure to exercise a "minimum degree of care" must rise to the level of "grossly or wantonly negligent." L.A. v. N.J. Div. of Youth & Family Servs., 217 N.J. 311, 332 (2014) (quoting G.S. v. N.J. Div. of Youth & Family Servs., 157 N.J. 161, 178 (1999)). "Thus, it is not inconsistent to find a child was placed at risk of harm and yet was not abused or neglected." N.J. Div. of Child Prot. & Permanency v. V.E., 448 N.J. Super. 374, 385 (App. Div. 2017).

When a referral is made to the Division that alleges a child is abused or neglected, the Division undertakes an investigation to determine whether abuse or neglect, as defined in N.J.S.A. 9:6-8.21(c), has occurred. N.J.S.A. 9:6-8.11; see also N.J.A.C. 3A:10-2.1(a). N.J.A.C. 3A:10-7.3(c)[5] defines the four findings to be made after the Division evaluates the available information as follows:

---

[5] Prior to April 1, 2013, the administrative findings of child abuse or neglect were categorized as "substantiated," "not substantiated," or "unfounded." See 45 N.J.R. 738(a) (April 1, 2013) (adopting the four-tier framework in place of the prior three-tier framework).

1.  An allegation shall be "substantiated" if the preponderance of the evidence indicates that a child is an "abused or neglected child" as defined in N.J.S.A. 9:6-8.21 and either the investigation indicates the existence of any of the circumstances in N.J.A.C. 3A:10-7.4 or substantiation is warranted based on consideration of the aggravating and mitigating factors listed in N.J.A.C. 3A:10-7.5.

2.  An allegation shall be "established" if the preponderance of the evidence indicates that a child is an "abused or neglected child" as defined in N.J.S.A. 9:6-8.21, but the act or acts committed or omitted do not warrant a finding of "substantiated" as defined in (c)1 above.

3.  An allegation shall be "not established" if there is not a preponderance of the evidence that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, but evidence indicates that the child was harmed or was placed at risk of harm.

4.  An allegation shall be "unfounded" if there is not a preponderance of the evidence indicating that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, and the evidence indicates that a child was not harmed or placed at risk of harm.

If the Division finds the allegation "established" or "substantiated," that finding "constitute[s] a determination by the [Division] that a child is an abused or neglected child pursuant to N.J.S.A. 9:6-8.21." N.J.A.C. 3A:10-7.3(d). If, however, the Division finds the allegation to be "not established" or "unfounded," the finding "constitute[s] a determination by the

[Division] that a child is not an abused or neglected child pursuant to N.J.S.A. 9:6-8.21."  Ibid.

The nature of the finding made also has implications for the right to seek administrative review and the retention of the records created.

N.J.A.C. 3A:10-8.1(b) requires the Division to "retain each record which contains a substantiated, established, or not established report."  Only records "relating to an unfounded finding" are required to "be expunged in their entirety," unless an exception applies under N.J.A.C. 3A:10-8.3. N.J.A.C. 3A:10-8.1(a).

N.J.A.C. 3A:5-4.3(a)(2) provides for an administrative hearing upon a request "to appeal a substantiated finding of child abuse or neglect, when there are material disputed facts." (Emphasis added).  Consequently, the regulation does not provide the right to an administrative hearing to challenge a "not established" finding.  In V.E., supra, 448 N.J. Super. at 402, we concluded that a party has the right to an administrative hearing when an "established" finding has been made.  Findings that allegations of abuse or neglect are "not established" or "unfounded" are final decisions appealable as of right to the Appellate Division.  R. 2:2-3(a)(2).

We first consider defendants' challenges to N.J.A.C. 3A:10-7(c)(3) and their argument that the investigation records here should be destroyed. Defendants argue that N.J.A.C. 3A:10-7(c)(3) vests too much discretion in Division caseworkers because it lacks a clear legal standard to be applied and allows Division caseworkers to make a "not established" finding based upon little evidence in a completely subjective analysis. The Division counters that the regulation represents an appropriate exercise of agency authority and was duly promulgated pursuant to the authority granted to it by the Legislature in N.J.S.A. 9:3A-7(g), N.J.S.A. 9:6-8.15 and N.J.S.A. 9:6-8.72. The Division further asserts that the record does not contain false and prejudicial information and is properly retained pursuant to statutory authority.

First, we observe that the regulation falls within the scope of the Division's "implementing and enforcing responsibility" and therefore, its interpretation "is ordinarily entitled to our deference." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J. Super. 93, 102 (App. Div. 1997)). We are not, however, "bound by the agency's legal opinions." Levine v. N.J. Div. of Motor Vehicles, 338 N.J. Super. 28, 32 (App. Div. 2001).

We note further that the regulation does not grant caseworkers a scope of discretion that is untethered to a defined legal standard. There are two components to a finding of "not established." First, the caseworker must determine the child is not "an abused or neglected child as defined in N.J.S.A. 9:6-8.21." N.J.A.C. 3A:10-7.3(c)(3). The second component is the existence of "evidence [that] indicates that the child was harmed or was placed at risk of harm." Ibid. Stated another way, the "not established" determination requires a showing of some harm or risk of harm that was not the result of "grossly or wantonly negligent" conduct. L.A., supra, 217 N.J. at 332 (quoting G.S., supra, 157 N.J. at 178).

Defendants do not challenge the sufficiency of the legal standard applicable to a finding that a child is or is not abused or neglected, a determination at the very core of the mission of the Division. Rather, they argue that it is the second component, whether there is "some evidence" of harm or risk of harm that renders the decision a "completely subjective" one by the caseworker. We disagree.

Certainly, a finding that "some evidence" exists is not an exacting standard.[6] But, it is a standard and, contrary to defendants' contentions, the case law provides adequate guidance as to what constitutes "harm or the risk of harm." See, e.g., N.J. Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 179 (2015).

Defendants also argue that they should be entitled to a fact-finding hearing to contest the finding of "not established." They contend "the finding casts the target under suspicion, and triggers a permanent retention of the record for future reliance and use by the agency, no matter how false or flimsy the evidence." They assert it "is fundamentally unfair" to allow the Division to rely in future matters upon evidence contained in these records that could not survive judicial scrutiny. However, as defendants concede, they have the right of direct appeal, as they have exercised here, to challenge the "not established" finding. See N.J. Dep't of Children & Families, Inst'l Abuse Investigation Unit v. D.B., 443 N.J. Super. 431, 442 (App. Div. 2015) ("When administrative review is not available, such findings are a final

---

[6] The Division has confirmed that the "evidence indicates" standard used in N.J.A.C. 3A:10-7.3(c)(3) "is a lesser standard than satisfaction of the statutory requirement in N.J.S.A. 9:6-8.21." 45 N.J.R. 743, response to comment 45, (Apr. 1, 2013).

decision appealable as of right to the Appellate Division." (citing R. 2:2-3(a)(2)).

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." In re an Allegation of Physical Abuse Concerning R.P., 333 N.J. Super. 105, 113 (App. Div. 2000) (alteration in original) (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484, 494 (1972)). Even when a person has a constitutionally protected interest, "it does not automatically follow that the person must be afforded an opportunity for an adjudicatory hearing." Ibid. And, "the 'due process' requirements which govern the proceedings of an agency that makes binding legal determinations directly affecting legal rights do not apply to agency proceedings which are purely investigatory in nature." In re Allegations of Physical Abuse at Blackacre Acad. on 2/10/93, 304 N.J. Super. 168, 182 (App. Div. 1997).

We have previously considered the issue of whether due process requires that a party be permitted an administrative appeal from a finding of "not established," or, under the prior regulation, "not substantiated." See D.B., supra, 443 N.J. Super. at 443 (citing our consideration in In re an Allegation of Physical Abuse Concerning L.R., 321 N.J. Super. 444 (App. Div. 1999), of "not substantiated" under N.J.A.C. 10:129-7.3(c) and concluding "our

reasoning [was] also valid when considering 'not established'"). We have consistently concluded "[a] finding by [the Division] that child abuse charges have not been substantiated, but that there is some indication a child was harmed or placed at risk of harm, is <u>purely investigatory in nature</u>, with none of the procedural protections of an adjudicatory proceeding." <u>R.P.</u>, <u>supra</u>, 333 <u>N.J. Super.</u> at 117 (emphasis added) (citation omitted); <u>see also</u> <u>D.B.</u>, <u>supra</u>, 443 <u>N.J. Super.</u> at 444; <u>N.J. Dep't of Children & Families, Inst'l Abuse Investigation Unit v. S.P.</u>, 402 <u>N.J. Super.</u> 255, 270 (App. Div. 2008).

The interest defendants claim gives rise to the right to hearing is their interest against the Division's retention of the records and possible use in the investigation of a future referral. In <u>D.B.</u>, we rejected the argument "that <u>N.J.A.C.</u> 10:129-8.1 [(now at <u>N.J.A.C.</u> 3A:10-8.1)], which allows the [Division] to retain unproven accusations forever is a violation of <u>N.J.S.A.</u> 9:6-8.40a." <u>D.B.</u> <u>supra</u>, 443 <u>N.J. Super.</u> at 444. We observed, "the interest of retaining information about alleged claims of abuse, where some cause for concern is demonstrated, is within the mandate given to the [Division] to protect children from abuse." <u>Ibid.</u>

Our decision in <u>V.E.</u>, <u>supra</u>, 448 <u>N.J. Super.</u> at 402, finding that a party against whom an "established" finding has been made must have the right to an administrative hearing, does not compel

19 <span style="float:right">A-2059-13T3</span>

a different conclusion. The defendant in <u>V.E.</u> argued that because an "established" finding made her subject to the same adverse consequences of disclosure suffered by persons after a "substantiated" finding is made, due process required that she be afforded the right to contest the determination in an adjudicatory hearing. <u>Id.</u> at 390. We reasoned:

> [A]n established finding is a conclusion abuse or neglect occurred . . . . Disclosure of an established finding is authorized by <u>N.J.S.A.</u> 9:6-8.10a(b) and other statutes, imposing upon the rights of a perpetrator. Thus, the result of an established finding is "significant" and is accompanied by "longstanding adverse consequences," which, in part, match the effects attached to a substantiated finding.
>
> [<u>Id.</u> at 395-96 (citations omitted).]

We concluded that, on the record before us, "necessary procedural safeguards must be employed to allow [the defendant] the right to challenge disputed adjudicative facts." <u>Id.</u> at 401. In reaching that conclusion, we explicitly distinguished <u>D.B.</u>, observing that "significant ramifications of disclosure are attached to an established finding." <u>Id.</u> at 397.

Defendants have not argued there are disclosure ramifications to the "not established" finding that imperil any claimed right. The administrative proceeding here was purely investigatory in nature and the records are retained pursuant to <u>N.J.S.A.</u> 9:6-8.10a. Even if, as defendants contend, there is erroneous

information contained in those records, the circumstances here do not provide a basis for an administrative appeal. Pursuant to N.J.A.C. 3A:10-7.5(a)(6), only instances of past abuse or neglect can be used as an aggravating factor to support a finding of abuse or neglect in the future. Further, in the event that a finding of abuse or neglect is made in the future, defendants may challenge the factual basis for that finding on direct appeal. We therefore conclude that defendants' challenges to N.J.A.C. 3A:10-7.3(c)(3) and their argument that the investigation records should be destroyed lack merit.

B.

Defendants also argue that the "not established" finding is contrary to the evidence, settled law and sound public policy. We disagree.

As defendants acknowledge, our review of the finding here is limited:

> [W]e are bound to uphold an agency's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." However, we are "in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue." "[I]f an agency's statutory interpretation is contrary to the statutory language, or if the agency's interpretation undermines the Legislature's intent, no deference is required."

> [N.J. Div. of Youth & Family Servs. v. T.B.,
> 207 N.J. 294, 301-302 (2011) (second and third
> alterations in original) (citations
> omitted).]

Defendants argue that "slapping with an open hand" cannot properly be the basis for the finding: "evidence indicates that the child was harmed or placed at risk of harm." Defendants contend "that a parent's reasonable use of corporal punishment cannot be construed as abuse and will result in an unfounded finding." They assert "the record is devoid of any credible evidence of physical harm caused by defendants' alleged use of excessive corporal punishment." (Emphasis added).

Defendants' argument assumes an invalid premise, i.e., that the standard for a finding of abuse and neglect based upon "excessive corporal punishment," N.J.S.A. 9:6-8.21(c)(4)(b), applies. Indeed, there is no allegation or finding here that they engaged in excessive corporal punishment.

As we have noted, corporal punishment constitutes "abuse" under N.J.S.A. 9:6-8.21(c)(4)(b), only if it is excessive, meaning the product of conduct that is "grossly or wantonly negligent." L.A., supra, 217 N.J. at 332 (quoting G.S., supra, 157 N.J. at 178). The "not established" finding is available only when such conduct has not been proven. N.J.A.C. 3A:10-7(c)(3). Therefore, the argument that the evidence is insufficient because it fails

to satisfy the standard for abuse based on excessive corporal punishment is plainly lacking in merit.

Defendants also contend that the finding is unsupported by the record because the children suffered no physical harm. This argument also lacks merit because the finding can be based upon the existence of some evidence that the children were subjected to a "risk of harm." N.J.A.C. 3A:10-7.3(c)(3). By way of example, in D.B., supra, 443 N.J. Super. at 435-37, we affirmed "not established" findings against both a teacher's aide who struck an autistic student although no observable marks were made and a teacher who grabbed a student's arm and merely scratched the arm, leaving only "a linear red mark."

It is undisputed that defendants resorted to slapping Adam and David on a regular basis. David expressed fear of Chad and said if granted one wish, it would be that Chad stop slapping him. The boys stated Patricia did not intervene and frequently told them they deserved the physical discipline meted out by Chad. Chad's younger son, Cory, described Chad as having "anger issues" and "yell[ing] a lot." We are satisfied there was sufficient support in the record for the Division to determine that the children: (1) were not abused or neglected as defined in N.J.S.A. 9:6-8.21(c), but (2) there is "evidence [that] indicates that the

child was harmed or was placed at risk of harm" under N.J.A.C.
3A:10-7.3(c)(3).

                                III.

In March 2015, the Division received a second referral, this time from an employee at David's school. In response to a class assignment to identify a time when the student was courageous and stood up to someone, David said the following in front of his class:

> [I]t was my step-dad [Chad] he's a child abuser, his [sic] mean, and does not care about anyone but himself . . . . My brother did something bad and [Chad] began kicking and punching him in the corner and he was bleeding . . . . I sprinted towards him; hit him and told him to go to his room. That time he was the one getting hit and he took the blame and he got in trouble.

The referent speculated that "the incident sounded as though it occurred in the past," but did not say whether David felt unsafe or afraid at home. The referent stated David did not have "any unusual marks or injuries" and that he preferred to be with his father over his mother. The referent reported that David had behavioral problems and faced "on-going turmoil," but that his parents were "very receptive" to his issues and placed him in therapy. The case was coded as a child welfare service, and was forwarded to a local Division office for a child welfare assessment. Ultimately, the Division "Recommend[ed] Termination

of [Division] involvement."

On May 6, 2015, the Division sent Chad and Patricia letters notifying them that the Division completed its "assessment as it pertains to a report or referral made to our agency on March 19, 2014 [sic]," and declined to provide services at that time. In addition, the Division provided a list of local "services that may be beneficial to you and your family."

Patricia and Chad filed a notice of appeal from the Division's May 6, 2015 letter. They do not claim the Division erred in failing to provide services following a child welfare assessment. Rather, they argue the Division treated the matter as a child welfare check as opposed to an investigation to avoid appellate review and assert the appeal was necessitated by the vagueness of the letter sent by the Division. They contend the child welfare assessment should be treated as an investigation for a child abuse allegation and, as a result, this court should compel the Division to make findings pursuant to N.J.A.C. 3A:10-7.3(c) and modify the notification letter to (1) reflect those findings, (2) clarify the nature of the Division's involvement, (3) state whether the records would be retained and for how long, and (4) advise defendants of their right to appeal.

The object of defendants' appeal appears to be a request that this court substitute the procedure urged by them for the

procedures established by the agency to implement its statutory duties. This is not a proper subject of appeal. See In re Twp. of Jackson, 350 N.J. Super. 369, 372 (App. Div. 2002) ("opinions of an administrative agency on which no action is taken do not constitute final agency action which may be appealed as of right" (citing N.J. Civil Serv. Ass'n v. State, 88 N.J. 605, 612, (1982)).

It is a basic tenet of appellate review that "[o]nly a party aggrieved by a judgment may appeal therefrom." Price v. Hudson Heights Dev., LLC, 417 N.J. Super. 462, 466 (App. Div. 2011) (quoting Howard Sav. Inst. v. Peep, 34 N.J. 494, 499 (1961)). The determination that no services were necessary was not adverse to defendants and they do not contend they were aggrieved by that decision. Their criticism of the manner in which the Division reached and communicated that determination is akin to an attempt to appeal from the rationale underlying the Division's action, which is not independently appealable. See Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001) (recognizing a party does not appeal from "reasons given for the ultimate conclusion.").

Accordingly, defendants' appeal from the May 2015 letter is dismissed.

In sum, we affirm the "not established" finding that is the subject of the appeal in Docket No. A-2059-13 and dismiss the appeal in Docket No. A-4589-14.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2059-13T3